EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Appellant–Defendant,

v.

RECTICEL FOAM CORPORATION, Jim Van Hooser, O.E. Fox, Eldon Hall, Chet Meyers and Steve Murphy, Appellees–Plaintiffs.

No. 49A02–9702–CV–124.

Court of Appeals of Indiana.

Sept. 30, 1999.

G. Ronald Heath, Thomas A. Barnard, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, Indiana, David C. Linder, King & Counsel, L.L.C., St. Paul, Minnesota, Attorneys for Appellant.

George M. Plews, Jeffrey D. Feathestun, Plews Shadley Racher & Braun, Indianapolis, Indiana, Henry W. Killeen, III, Nelson Perel, Harris Beach & Wilcox, Hamburg, New York, Attorneys For Appellees.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Recticel Foam Corporation ("RFC") and its employees Jim Van Hooser, O.E. Fox, Eldon Hall, Chet Meyers and Steve Murphy (collectively, "Recticel") were the subject of legal proceedings associated with waste handling practices at Tennessee manufacturing plants once owned by RFC. Recticel initiated this action against certain insurers, including Employers Insurance of Wausau ("Wausau"), to establish insurance coverage for its alleged environmental contamination. Wausau brings this interlocutory appeal from the denial of its motion to dismiss Recticel's complaint on grounds of *forum non conveniens* and from the grant of partial summary judgment in favor of Recticel on claims that

1. We heard oral argument on June 22, 1999.

Wausau owes duties to defend and indemnify Recticel.

We affirm in part, reverse in part and remand.[1]

### ISSUES

Wausau raises multiple issues which we consolidate and restate as:

1. Whether the trial court abused its discretion when it denied Wausau's motion to dismiss for *forum non conveniens*.

2. Whether genuine issues of material fact preclude summary judgment on Wausau's duty to defend the legal proceedings initiated against Recticel.

3. Whether genuine issues of material fact preclude summary judgment on Wausau's duty to pay all present and future "defense costs."

4. Whether genuine issues of material fact preclude summary judgment on the propriety of invoking the equitable doctrine of estoppel to prevent Wausau from raising policy defenses.

### FACTUAL AND PROCEDURAL HISTORY

RFC, a Delaware corporation, began its operations in 1979 with the acquisition of two manufacturers of polyurethane foam. From 1983 to 1990, RFC was headquartered in LaPorte, Indiana, the site of a core manufacturing center, after which the corporation transferred operational responsibility for its manufacturing plants to Foamex, L.P. ("Foamex"), a newly formed limited partnership.

RFC purchased primary and excess comprehensive general liability policies from Wausau, a Wisconsin corporation, for consecutive periods between August 1, 1981, and June 30, 1987. In 1991, the Tennessee Department of Environment and Conservation ("TDEC") sent Foamex a formal "Notice of Violation" letter stating that the agency had been conducting an investigation into allegations that haz-

ardous waste generated at Foamex had been illegally transported from its Morristown, Tennessee facility and disposed of at the "Fred & Steve Cansler Hazardous Waste Site" located in a neighboring county (the "Cansler Farm"). The TDEC letter demanded that "corrective action" be taken. RFC advised Wausau of the letter and, in a 1993 non-waiver agreement, Wausau agreed to participate in RFC's defense "for the suit entitled *Tennessee DEC v. Recticel Corporation,* if so requested, as though such policies are applicable." Wausau had the right to cancel this undertaking upon thirty days notice.

Meanwhile, persons residing near the Cansler Farm filed two suits against RFC in Tennessee state courts, *Foshie v. Cansler* and *Cobble v. Cansler.* Each complaint alleged damages resulting from improper disposal of RFC materials at the Cansler Farm. The *Foshie* complaint added the RFC employees named as individual plaintiffs in this action as defendants. Wausau and RFC executed two additional non-waiver agreements in which Wausau agreed to participate in the defense of the *Foshie* and *Cobble* lawsuits as if the policies are applicable. In all three non-waiver agreements, Wausau reserved the right to "enforce all rights and obligations" against RFC. Wausau did not assume Recticel's defense directly. Rather, Recticel assembled a defense team and then tendered invoices for "defense costs" to Wausau.

In October of 1994, Wausau filed a declaratory judgment action in the United States District Court for the Eastern District of Tennessee. Recticel moved to dismiss that case and, on January 4, 1995, filed the present action against Wausau and other insurance carriers in the Marion Superior Court. Recticel asserted that Wausau had refused to pay all but a small portion of the defense costs submitted. In Counts I and II, Recticel averred that Wausau breached its duty to defend under the non-waiver agreements and the comprehensive general liability policies, respectively. Count III alleged a breach of the duty of good faith and fair dealing and, in Count IV, Recticel sought indemnification under the Wausau policies. In a separate count, Recticel sought recovery from other insurance carriers.

Wausau moved to dismiss this action on grounds of *forum non conveniens.* While that motion was pending, the Tennessee federal court dismissed Wausau's declaratory judgment action on jurisdictional grounds. Wausau then filed a third suit in a Tennessee state court.[2] Meanwhile, Recticel moved for partial summary judgment in the Marion Superior Court seeking an order (1) directing Wausau to pay Recticel's past and future defense costs in the TDEC, *Foshie* and *Cobble* matters under both the non-waiver agreements and the insurance policies, and (2) estopping Wausau from asserting policy defenses to avoid its duties to defend and indemnify Recticel. Wausau did not file any "designation of material facts" or request additional discovery but, instead, responded with a memorandum of law and a two-page affidavit with five attachments.[3] Follow-

2. Purportedly, the Tennessee state action is stayed pending the outcome of this case.

3. Our review of this case is frustrated by Wausau's numerous citations to evidentiary material submitted *after* the trial court had ruled on Recticel's motion for partial summary judgment. Indiana Trial Rule 56(C) does not mandate the manner in which a party is to specifically designate material. *Van Eaton v. Fink,* 697 N.E.2d 490, 493 (Ind.Ct.App.1998). However, the Rule states that the party must designate material *at the time* a party files its motion or response.

T.R. 56(C). Trial Rule 56(H) then explains: "No judgment rendered on the motion [for summary judgment] shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." *See Kokomo Ctr. Township Consol. Sch. Corp. v. McQueary,* 682 N.E.2d 1305, 1307 (Ind.Ct. App.1997). In addition, Wausau mischaracterizes the record. Our supreme court has recently cautioned that a biased statement of the facts can hamper advocacy as it renders the facts unreliable to the court in deciding

ing a hearing, the trial court denied Wausau's motion to dismiss and granted Recticel's motion for partial summary judgment on Counts I, II and IV. The January 6, 1997, judgment reads in part:

> b. Recticel shall recover from Wausau a judgment in the amount of $1,562,419.43, plus defense costs incurred by Recticel from June 1995 to date;
>
> c. Wausau shall pay future costs of defense of Recticel in the Cansler Farm TDEC [Notice of Violation], *Foshie*, and *Cobble* actions as they are incurred; and
>
> d. Wausau is estopped from raising any policy defenses against defense or indemnification obligations to these underlying actions.

Record at 1852.

Approximately one month after the judgment was entered, Wausau filed its answer and counterclaims together with a motion to correct error and voluminous additional evidentiary material. The motion to correct error was deemed denied by operation of law.[4] Wausau initiated separate appeals from the January 6, 1997 judgment and from the denial of its motion to correct error. This court consolidated the appeals.

**Issue One: *Forum non Conveniens***

■ Wausau first contends that the court erred when it denied Wausau's motion to dismiss Recticel's complaint on the grounds of *forum non conveniens*.[5] Indiana Trial Rule 4.4(C), (D) and (E) govern *forum non conveniens* determinations. Trial Rule 4.4(C) provides:

Jurisdiction under this rule is subject to the power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just.

In the exercise of that discretion the court may appropriately consider such factors as:

> (1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;
>
> (2) Convenience to the parties and witnesses of the trial in this state [and] in any alternative forum;
>
> (3) Differences in conflict of law rules applicable in this state and in the alternative forum; or
>
> (4) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

The purpose of Trial Rule 4.4(C) is to permit a case to be litigated in another state upon a showing that litigation in Indiana is so inconvenient that substantial injustice is likely to result. *Freemond v. Somma*, 611 N.E.2d 684, 691 (Ind.Ct.App. 1993), *trans. denied.* The determination of whether to dismiss an action under Rule 4.4(C) lies within the trial court's sound discretion. *Id.* at 690.

■ Here, Recticel chose to litigate its claim in Indiana, and that choice should be given great weight. *Euler v. Seymour Nat'l Bank*, 519 N.E.2d 1242, 1245 (Ind.Ct. App.1988). In its complaint, Recticel named twenty-three insurance companies, including Wausau, as defendants.[6] Three

---

the issues. *Conner v. State*, 711 N.E.2d 1238, 1253 n. 8 (Ind.1999) (citing *Chesterfield Management, Inc. v. Cook*, 655 N.E.2d 98, 100–01 (Ind.Ct.App.1995), *trans. denied* ).

4. *See* Ind. Trial Rule 53.3(A).

5. Wausau also insists that we must remand this case for findings of fact and conclusions of law. Wausau is mistaken. Indiana Trial Rule 52(A) states that findings of fact "are unnecessary on decisions of motions" under Trial Rule 56 or any other motion except as

provided in Rule 41(B) (involuntary dismissal) and 59(J) (relief granted on motion to correct error).

6. In addition to Wausau, Recticel filed its complaint against: St. Paul Fire and Marine Insurance Company; Pacific Employers Insurance Company; Commercial Union Insurance Company; CNA Insurance Companies; Continental Insurance Company; Stonewall Insurance Company; Northbrook Insurance Company; Underwriters of Lloyds, London; INSCO, Ltd.; The Birmingham Fire Insur-

other insurers joined in Wausau's motion to dismiss for *forum non conveniens* but neither they, nor the other defendant insurers, are parties to this appeal.[7] The other nineteen defendants did not contend that litigation in Indiana would be so inconvenient as to cause a substantial injustice. In considering the motion to dismiss, the trial court necessarily took all defendants into account, including those which had contractually agreed to litigate in any court of competent jurisdiction.

During the relevant policy periods, RFC was headquartered in Indiana where a significant portion of its manufacturing operations was located. Indiana has an interest in protecting its insureds. Although Tennessee has an interest in interpreting it own laws, in this case, Wausau argues for application of New York law. Tennessee has no more stake in construing New York law than does Indiana.

■ In addition, although the conduct that gave rise to the TDEC, *Foshie* and *Cobble* actions occurred in Tennessee, this case involves insurance coverage, i.e., Wausau's duties to defend and indemnify Recticel. Resolution of those issues is largely a matter of interpreting written contracts, which is generally a question of law. *Barga v. Indiana Farmers Mut. Ins. Group, Inc.*, 687 N.E.2d 575, 578 (Ind.Ct. App.1997), *trans. denied; see* Peter J. Kalis & Thomas M. Reiter, *Forum Non Conveniens: A Case Management Tool for Comprehensive Environmental Insurance Coverage Actions?* 92 W. VA. L.REV. 391, 406–09 (1990). In its complaint, Recticel also avers that Wausau breached its duty to deal with Recticel in good faith. That claim is based upon the relationship be-

tween Wausau and Recticel and requires examination of Wausau's conduct in light of its duties under the policies and agreements. Wausau's headquarters are in Wisconsin. Indiana is closer to those headquarters than is Tennessee.

■ Still, Wausau insists that it will be prejudiced by its inability to compel Tennessee witnesses to testify in Indiana. The availability of compulsory process for attendance of unwilling witnesses is a valid consideration, although not dispositive. *See Drexel Burnham Lambert, Inc. v. Merchants Inv. Counseling, Inc.*, 451 N.E.2d 346 (Ind.Ct.App.1983) (most non-party witnesses resided in Minnesota); *Killearn Properties, Inc. v. Lambright*, 176 Ind.App. 684, 377 N.E.2d 417 (1978) (majority of prospective witnesses resided in Florida). However, Wausau fails to identify any witness who could not testify in Indiana. Nor does it identify any specific testimony which would be unavailable if the case were tried in Indiana. Thus, we are not persuaded that Wausau would be substantially prejudiced due to an inability to compel live testimony.

Although litigation in Indiana could be more inconvenient and expensive, that is often the circumstance where a litigant is a corporation conducting business nationally. *See Killearn Properties*, 176 Ind.App. at 688, 377 N.E.2d at 420. In a case such as this, with multiple defendants, there may be no jurisdiction that is readily accessible to all parties. Any inconvenience is mitigated by air travel, overnight delivery, electronic data transmission and videotaped depositions which are part of the normal course of business for such compa-

ance Co. of Pennsylvania; Gerling American Insurance Company; Central National Insurance Company; Aetna Casualty and Surety Company; Harbor Insurance Company; Lexington Insurance Company; Royal Indemnity Company; Reliance Insurance Company of Illinois; American Zurich Insurance Company; Federal Insurance Company; American Empire Surplus Lines Insurance Company; International Insurance Company; and National Union Fire Insurance Company.

7. Only Wausau was ordered to pay defense costs and, thus, Wausau appealed as a matter of right under Indiana Appellate Rule 4(B)(1). Our court determined that, in the interest of judicial economy, the *forum non conveniens* and estoppel issues would also be considered, as well as the order to pay future defense costs as submitted.

---

nies. *Travelers Indem. Co. v. Monsanto Co.*, 692 F.Supp. 90, 92 (D.Conn.1988).

 In reviewing discretionary orders, we affirm if there is any rational basis for the trial court's decision. *Drexel*, 451 N.E.2d at 349. Having found several rational grounds for the court's ruling, we conclude that, in the exercise of its discretion, the court properly denied Wausau's motion under Rule 4.4(C).

In addition, while the parties on appeal cite only to Rule 4.4(C), Indiana Trial Rule 4.4(D) applies directly to this multi-party litigation. That Rule provides:

> No stay or dismissal shall be granted due to a finding of *forum non conveniens* until all properly joined defendants file with the clerk of the court a written stipulation that each defendant will:
>
> > (1) submit to the personal jurisdiction of the courts of the other forum; and
> >
> > (2) waive any defense based on the statute of limitations applicable in the other forum with respect to all causes of action brought by a party to which this subsection applies.

T.R. 4.4(D). Rule 4.4(D) embraces the following rationale:

> [T]he suit will be entertained, no matter how inappropriate the forum may be, if the defendant cannot be subjected to jurisdiction in other states. The same will be true if the plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept the defendant's stipulation that he will not raise this defense in the second state.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 84 cmt. c (1971). Under Indiana Trial Rule 4.4(E), if the moving party violates a stipulation required by subsection (D), the court shall withdraw the order staying or dismissing the action and proceed as if the order had never been issued.[8]

 Subsections 4.4(D) and (E) limit a finding of *forum non conveniens*. 1 WILLIAM F. HARVEY, INDIANA PRACTICE, Comments on Rule 4.4(D) and (E) (Supp.1998). Wausau was required to show that all properly joined defendants had filed a "written stipulation" with the clerk of the court. T.R. 4.4(D). Wausau has neither alleged nor demonstrated compliance with subsection (D) which, in itself, was fatal and dispositive of Wausau's motion. Under Trial Rule 4.4(D), the court properly denied Wausau's motion to dismiss on grounds of *forum non conveniens*.

### Issue Two: Duty to Defend

We now turn to the trial court's grant of Recticel's motion for partial summary judgment. When reviewing a ruling on a summary judgment motion, we conduct the same inquiry as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 983–84 (Ind.1998). Like the trial court, we consider only those parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and other matters which have been designated by the parties to the trial court for consideration. *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind.1997). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Shell Oil Co.*, 705 N.E.2d at 984. The moving party bears the burden of proving the absence of genuine issues of material fact. *Id.* If the movant sustains that burden, the opponent must set forth specific facts showing there is a factual dispute. *Id.*

### A. Choice of Law

In their briefs, both parties agree that resolution of this case requires a choice-of-law analysis.[9] Wausau argues that, under

---

8. Subsections 4.4(D) and (E) became effective February 1, 1995.

9. At oral argument, Wausau took the position that under either New York or Indiana law, *it*

**1024**

Indiana's choice-of-law principles, the trial court was required to apply the substantive law of New York.[10] Recticel insists that the law of Indiana applies.

Absent an effective choice of law by the parties, the question is decided by the courts of the state in which the lawsuit is pending. *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230, 232 (Ind.Ct.App.1997), *trans. denied.* Indiana's choice of law rule for contract actions calls for applying the law of the forum with the most intimate contacts to the facts. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct. App.1997), *trans. denied.* The following are representative of the factors to consider: (a) the place of contracting; (b) the place of contract negotiation; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623, 626 (Ind.Ct.App. 1983) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971)).

Here, neither the place of contracting nor the place of negotiation is determinative. RFC managed its insurance affairs from Indiana where the policies were maintained. Specifically, Indiana personnel were responsible for the purchase of insurance, the payment of premiums and the resolution of any disputes relating to the policies. Wausau's policies were issued from its New York office. Some policies list RFC's address as

Indiana, and others list RFC's address as New York, the location of its broker.

It is unclear whether the negotiations occurred in New York or in Indiana. Wausau claims that the policies were negotiated between Wausau personnel and RFC's agents in New York; RFC claims they were negotiated in Indiana. It is likely that at least some negotiation occurred in both states.[11]

The place of performance and the location of the subject matter relate to the location where potential liability will arise in the context of insurance contracts. *Travelers Indem. Co. v. Summit Corp. of America*, 715 N.E.2d 926, 932–933 (Ind.Ct. App.1999). The place of performance has been defined as the location where the insurance funds will be put to use. *Id.*, 715 N.E.2d at 932–933. However, until all coverage issues have been decided, the place of performance cannot be determined. *Dana*, 690 N.E.2d at 293. Accordingly, this factor is assigned little weight when, as here, at the time of contracting the place of performance is either uncertain or unknown. *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e (1971)).

Without other evidence of the probability of risks at individual sites, it is assumed that, as the number of sites increases, so does the risk of an occurrence. *Summit*, 715 N.E.2d at 933. Thus, the location of the subject matter of the contract, also known as the principal location of the insured risk, is given greater weight

has no duty to defend because there was no accident. Recticel asserts that Indiana and New York agree on the interpretation of the word "suit" which appears in the insurance policies. *See infra.* A central issue in this case is the interpretation of insurance contracts and non-waiver agreements. For purposes of our analysis and, because the issue will most certainly reappear on remand, we assume a conflict exists in the construction of at least one of the material contractual provisions.

10. The trial court did not specify which state's law it applied. On appeal, Wausau asserts, in the alternative, that Tennessee law is applicable. Recticel points out that Wausau did not make that argument before the trial court. In any event, Wausau does not support the assertion in its brief and, thus, has waived consideration of the issue. *See* Ind. Appellate Rule 8.3(A)(7).

11. The parties do not discuss the Restatement factors as they specifically apply to the non-waiver agreements. We presume that the same or similar contacts are involved.

than any other single contact in determining the state of the applicable law when that risk can be located principally in a single state. *Dana,* 690 N.E.2d at 293 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. b (1971)). It is also accorded greater significance when the other Section 188 factors do not point primarily to one forum. *Id.* at 294.

During the term of the relevant insurance contracts, RFC's manufacturing plants were located in numerous states, including New York and Indiana, and its products were allegedly delivered "all over the world." Wausau maintains that, according to its records, in 1981 RFC had two facilities in New York and two in Indiana. In 1984, after RFC moved its headquarters from New York to Indiana, RFC had one facility in New York and two in Indiana. By 1987, there was one facility in each state. Thus, although there was potential liability in both Indiana and New York, Indiana was the location of more sites. This factor slightly favors Indiana.

■■■ Wausau is a Wisconsin Corporation with its headquarters in Wisconsin. RFC is domiciled in Delaware. However, RFC's principal place of business was in Indiana from 1983 until 1990. With respect to most issues, a corporation's principal place of business is a more important contact than its place of incorporation. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 cmt. e (1971). Here, the principal place of business counts as a distinguishing factor.

■■■ None of the factors examined is compelling or conclusive. However, the risk of occurrences was slightly greater in Indiana, and Indiana was RFC's headquarters during the relevant period while New York was neither Wausau's domicile nor its headquarters. The number and quality of contacts favor Indiana over New York and, thus, we hold that the substantive law of Indiana applies to the insurance policies and non-waiver agreements.

### B. Non–Waiver Agreements

Next, we consider Wausau's claim that the trial court erred when it found it had a duty to defend the TDEC Notice of Violation Letter and the *Foshie* and *Cobble* lawsuits. The trial court summarily ordered Wausau to pay past and future defense costs without indicating the basis of its decision. Recticel averred that Wausau owed it a duty to defend under both the non-waiver agreements and the insurance policies.

■■■ An insurance company's duty to defend is broader than its duty to indemnify. *Seymour Mfg. Co. v. Commercial Union Ins. Co.,* 665 N.E.2d 891, 892 (Ind.1996). An insurer, after making an independent determination that it has no duty to defend, must protect its interest by filing a declaratory judgment action for a judicial determination of its obligations under the policy or defend its insured under a reservation of rights. *Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 902 (Ind. Ct.App.1992), *trans. denied.* If it refuses to defend it does so at its peril. *Id.*

Here, Wausau and RFC executed non-waiver agreements in which Wausau agreed to "participate in the defense" of the underlying proceedings. Neither party disputes the validity of the non-waiver agreements. *See Bergh v. Canadian Universal Ins. Co.,* 216 So.2d 436, 441 (Fla. 1968) (non-waiver agreements are generally enforceable between competent parties). Wausau now asserts that it has no duty to defend any of the proceedings.[12] In es-

---

12. As one basis for that assertion, Wausau insists that Recticel's actions were intentional. Recticel and Steve Cansler were the subject of a 1992 criminal indictment filed in a Tennessee federal court. *See United States v. Recticel Foam Corp.,* 858 F.Supp. 726 (E.D.Tenn. 1993). In 1994, RFC entered into a plea agreement in which it pleaded guilty to "the knowing omission of material information in a record or other document maintained or used for purposes of compliance" with certain regulations and agreed to complete approved closure plans for the Cansler Farm pursuant to the 1991 TDEC letter. All other

sence, Wausau argues that the policies do not provide coverage. However, in all three non-waiver agreements Wausau agreed to defend Recticel "as though such policies are applicable."·

■ Indiana recognizes that an insurer may properly refuse to defend where an independent investigation reveals a claim *patently* outside the risks covered by the policy. *Liberty Mut.*, 586 N.E.2d at 901. To that end Wausau reserved the right to cancel its defense obligation under the non-waiver agreements upon thirty days notice. Wausau did not exercise that right but, instead, has paid a portion of the defense costs submitted.

Wausau also takes the position that it intended to defend the TDEC matter only in the event an actual lawsuit were filed. Because no formal lawsuit was filed, it now asserts that it has no duty to defend.[13] Wausau's assertion requires that we interpret the non-waiver agreement which provides, in relevant part, that Wausau will participate in the defense of RFC "for the suit entitled *Tennessee DEC v. Recticel Corporation.*"

■ Indiana courts have not construed the word "suit" in a non-waiver agreement. However, in the context of a comprehensive general liability insurance contract, this court has decided that "suit" includes coercive and adversarial environmental administrative proceedings. *Dana*, 690 N.E.2d at 296 (citing *Ryan v. Royal Ins. Co.*, 916 F.2d 731, 738 (1st Cir.1990)), *trans. denied.* "To decide otherwise would encourage insureds to not cooperate with governmental agencies, thus running the risk of huge fines, punitive damages, and delay in remediating environmental pollution." *Id.* We give the same interpretation

to "suit" as used in the non-waiver agreement here. The TDEC Notice of Violation letter charged RFC with "illegal activity." Specifically, it alleged that, "[a]s a result of this hazardous waste investigation" the company "is in violation of" specific "Rules Governing Hazardous Waste Management in Tennessee." The letter demanded that "corrective action" be undertaken and advised that the company "may be required to submit a Post–Closure Permit Application" as required by "Tennessee Hazardous Waste Management Regulations." The letter is sufficiently adversarial to constitute a "suit" as the word is used in the non-waiver agreement.

Wausau, a sophisticated insurer, contracted to defend "the suit," an obvious reference to the existing TDEC letter, which was the only action pending between the TDEC and Recticel. Wausau did not condition its defense on the filing of a formal lawsuit. *See Summit*, 715 N.E.2d at 933–934 ("suit" includes environmental administrative actions where insuring agreement provides insurer will pay sums insured "becomes legally obligated to pay as damages because of bodily injury or property damage" without requirement that obligation arise from any particular kind of proceeding in court). Wausau is bound by its agreement. We conclude that Wausau has a duty under the non-waiver agreement to defend Recticel in the TDEC, *Foshie* and *Cobble* actions. In light of our conclusion, we need not consider whether Wausau had an independent duty to defend under the insurance policies. *But see id.*, 715 N.E.2d at 934–40 (construing provisions of comprehensive general liability policies to determine coverage for environmental claims).

charges against RFC, including those associated with the Cansler Farm, were dismissed with prejudice.

**13.** In a separate argument, Wausau contends that it had no duty to defend the TDEC letter because it was directed to Foamex, not RFC, its insured. Wausau cannot rely upon a theo-

ry not properly before the trial court. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 139 (Ind.Ct.App.1993), *trans. denied.* In any event, we find no merit to Wausau's contention. The notice of violation letter was sent to Foamex as RFC's successor and specifically mentions RFC as Foamex's predecessor.

## Issue Three: Defense Costs

In a separate argument, Wausau contends that the trial court erred when it ordered Wausau to pay Recticel $1,562,-419.43 for past defense costs plus all future costs of defending the TDEC, *Foshie,* and *Cobble* actions. Wausau has paid a portion of attorney's fees incurred in the *Foshie* and *Cobble* lawsuits but has refused to pay all expenses as submitted. In this appeal, it argues that other expenses were unreasonable or unnecessary and that some "consultants' fees" do not qualify as costs of "defense." [14]

■■■ Because Wausau has a duty to defend Recticel, Wausau is liable for the reasonable and necessary expenses incurred by Recticel in defending the actions. Nevertheless, Recticel has the burden of establishing the nature of the services rendered and the reasonableness of the charges. *See Loudermilk v. Casey,* 441 N.E.2d 1379, 1387 (Ind.Ct.App.1982). Recticel submitted a list of defense costs along with an affidavit from its corporate counsel stating that all costs were reasonable and necessary. That self-serving opinion is insufficient to meet Recticel's burden in a summary judgment proceeding. Specifically, the invoiced costs and counsel's opinion do not establish the absence of a genuine issue of fact concerning reasonableness and necessity. *Cf. Transcontinental Ins. Co. v. Manta, Inc.,* 714 N.E.2d 1277, 1284 (Ind.Ct.App. 1999) (parties presented voluminous conflicting evidentiary material on fees, and it was clear that trial court would enter judgment after determining which party's evidence was more credible).

■■■ This court has recognized that judicial notice of the reasonableness of fees

may be appropriate in routine cases or in those involving small awards. *See Loudermilk,* 441 N.E.2d at 1387. However, in this atypical case where the expenses claimed are substantial, there must be objective evidence supporting the court's determination. *See Midland–Guardian Co. v. United Consumers Club, Inc.,* 499 N.E.2d 792, 799 (Ind.Ct.App.1986); *see also* Ind. Professional Conduct Rule 1.5(a) (factors to be considered in determining reasonableness of lawyer's fee). There is also a question whether the consultant fees listed are actually "defense costs." Although we accord the trial court discretion in allocating between defense and indemnification costs, the nature of the expense is a question of fact. Accordingly, we reverse the court's entry of partial summary judgment on the issue of defense costs. Upon remand, the trial court is instructed to conduct an evidentiary hearing and to make the necessary factual determinations.

## Issue Four: Coverage by Estoppel

Finally, Wausau challenges the court's ruling that it is estopped from raising policy defenses against its duty to indemnify. Wausau points out that it expressly reserved its right to assert those defenses in the non-waiver agreements to which RFC was a party. Recticel insists that, notwithstanding those agreements, Wausau's refusal to pay all defense costs and its "litigation conduct," including its failure to conduct a reasonable investigation and its delay in reaching a coverage determination, justify the trial court's finding of coverage by estoppel.

■■■ As its name suggests, a "non-waiver agreement" concerns waiver. Es-

---

14. Wausau also argues that the amounts incurred for the defense of the TDEC letter naming Foamex as the liable party are not recoverable because Foamex is not the named insured under the Wausau policies. In addition, Wausau maintains that Recticel cannot recover costs incurred before notice to Wausau or costs incurred after notice but as to which Wausau had no knowledge and did not

consent. Wausau has not shown reversible error in either of these matters. In a separate argument, Wausau claims it should not be held liable for all costs. However, that claim was not raised in the trial court at the appropriate time. *See* T.R. 56(C) and (H); *Otto,* 612 N.E.2d at 139. Thus, we so not address that issue.

toppel has a meaning distinct from waiver but the terms are often used synonymously with respect to insurance matters. *United Servs. Auto. Ass'n v. Caplin*, 656 N.E.2d 1159, 1162–63 (Ind.Ct.App.1995), *trans. denied.* Specifically, here, estoppel "refers to a preclusion from asserting rights by an insurance company or an abatement of rights and privileges of the insurance company where it would be inequitable to permit the assertion." 46 C.J.S. *Insurance* § 786 (1993) (footnotes omitted).[15] Conventional jurisprudence defines the elements of equitable estoppel as the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment. *Caplin*, 656 N.E.2d at 1163.

▇▇▇▇ Indiana adheres to the general rule that the doctrine of estoppel is not available to create or extend the scope of coverage of an insurance contract. *Manta*, 714 N.E.2d at 1281. The rationale for the rule is that an insurance company should not be forced to pay the loss for which it has not charged a premium. *Id.* Recently, this court recognized two exceptions to the general rule. *Id.*, 714 N.E.2d at 1281. The first exists when an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk. *Id.* Our supreme court applied the first exception to estop

an insurer from asserting a vacancy provision of the contract where the insurer knew the insured's building was vacant at the time the coverage was purchased. *Id.*, 714 N.E.2d at 1281–1282 (citing *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 363 N.E.2d 985, 992 (1977)).

▇▇▇▇ Under a second exception, applied for the first time in *Manta*, an insurer may be estopped from raising the defense of noncoverage when it assumes the defense of an action on behalf of its insured without a reservation of rights but with knowledge of facts which would have permitted it to deny coverage. *Id.* (citing *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 859 (Ind.Ct.App.1998)). This exception is predicated upon the insurer's conflict of interest, that is, at the same time the insurer defends the insured, it may also be formulating policy defenses to deny coverage. *Id.*, 714 N.E.2d at 1281. It is also justified by the fact that the insured is deprived of his right to control his defense. *Id.*[16] Whether an insurer is estopped to disclaim liability under the insurance policy is generally a question for the factfinder unless the facts giving rise to the estoppel are undisputed and susceptible of only one interpretation. 46 C.J.S. *Insurance* § 785; *see, e.g., American Family Mut. Ins. Co. v. Kivela*, 408 N.E.2d 805, 813 (Ind.Ct.App.1980) (insurer abandoned

**15.** By comparison, a waiver is "the voluntary or intentional abandonment or relinquishment of a known right, an election not to take advantage of a technical defense in the nature of a forfeiture, raised by an act of the insurance company...." 46 C.J.S. § 786 (footnotes omitted).

**16.** If an insurer fails to defend under a reservation of rights or to seek a declaratory judgment that there is no coverage and is later found to have wrongfully denied coverage, the insurer may be estopped from raising policy defenses to coverage. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill.2d 127, 237 Ill.Dec. 82, 708 N.E.2d 1122, 1133 (1999). This estoppel doctrine has roots in the principle of equitable estoppel but "arose out of the recognition that an insurer's duty to defend under a liability insurance policy is so

fundamental an obligation that a breach of that duty constitutes a repudiation of the contract." *Id.* at 1135. The Seventh Circuit Court of Appeals, interpreting Indiana law, decided that an insurance company which delayed six months in notifying the insured of its wrongful decision not to defend was barred from denying coverage based on an exclusion. *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 571 (7th Cir.1997). The *Stroh Brewing* court relied, in part, upon *Indiana Insurance Co. v. Ivetich*, 445 N.E.2d 110, 112 (Ind.Ct.App.1983), where this court stated, "[W]hen an insurer induces the insured to effect self-help to protect himself, it cannot then hide behind the language of the insurance policy to avoid its duty to defend or insure."

insureds by denying liability and refusing to defend lawsuit).

■ Here, Wausau did not categorically refuse to defend Recticel. Rather, it entered into non-waiver agreements and filed a declaratory judgment action. Thus, neither exception applies. *See* 7C John Alan Appleman, INSURANCE LAW AND PRACTICE § 4694, at 336 (Berdal ed.1979) (generally where insurer conducts investigation or defense under non-waiver agreement, insurer will not be estopped to set up policy defenses available to it). However, a non-waiver agreement does not immunize an insurer from responsibility for all its actions. *Connecticut Fire Ins. Co. v. Fox,* 361 F.2d 1, 7 (10th Cir.1966). Our supreme court has recognized the legal duty implied in all insurance contracts that the insurer deal in good faith with its insured. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 518 (Ind.1993). Thus, where an insurer agrees to defend an action under a non-waiver agreement, it must proceed in good faith. *See Tank v. State Farm Fire & Cas. Co.,* 105 Wash.2d 381, 715 P.2d 1133, 1137 (1986).[17]

In Count III of its complaint, Recticel advanced a claim for the tortious breach of the duty of good faith. However, Recticel neither sought nor obtained summary judgment on that count. Consequently, the record is not developed on that claim. *See Gooch v. State Farm Mut. Auto. Ins. Co.,* 712 N.E.2d 38 (Ind.Ct.App.1999) (fact issues precluded summary judgment in favor of insurer on insured's bad faith claim).

■ The trial court did not specify its basis for finding an estoppel. Our review is *de novo,* and we cannot say on this record that Wausau's failure to pay all invoices submitted by Recticel justifies an estoppel as a matter of law. Wausau's duty to Recticel does not include the duty to pay all bills as submitted. Rather, the insurer has the right to challenge the nature and reasonableness of the defense expenses incurred. The same can be said for Wausau's "litigation conduct" in this case involving environmental claims under policy provisions which have been given varying interpretations by the courts. *See, e.g.,* Carol A. Crocca, Annotation, *Liability Insurance Coverage for Violations of Antipollution Laws,* 87 A.L.R.4th 444 (1991 & 1999 Supp.); William B. Johnson, Annotation, *Construction and Application of Pollution Exclusion Clause in Liability Insurance Policy,* 39 A.L.R.4th 1047 (1985 & 1999 Supp.). In sum, we decline Recticel's request to avoid further litigation. The trial court's determination that Wausau was estopped from asserting its defenses against indemnification is premature and is reversed.

## Conclusion

We affirm the trial court's denial of Wausau's motion to dismiss on the basis of *forum non conveniens.* We also affirm that part of the court's order on partial summary judgment which found Wausau has a duty to defend Recticel in the TDEC, *Foshie* and *Cobble* actions. However, we reverse that part of the order which directed Wausau to pay all present and future defense costs, and we remand for a factual determination concerning the reasonableness and necessity of those costs. In addition, we reverse the court's

---

**17.** The Supreme Court of Washington set forth four criteria by which an insurer can fulfill its duty to defend under a reservation of rights:

First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the *insured* is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of *all* developments relevant to his policy coverage and the progress of his lawsuit.... Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*Tank,* 715 P.2d at 1137.

conclusion that Wausau is estopped from raising defenses to indemnification.

Affirmed in part, reversed in part and remanded.

GARRARD, J., and KIRSCH, J., concur.