**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 30 2012, 8:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN M. TRUITT**
Bertig & Associates LLC
Valparaiso, Indiana

ATTORNEY FOR APPELLEE:

**PAUL A. LEONARD**
Burke Costanza & Carberry LLP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SIRAJ KHAJA AHMED, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 64A03-1204-DR-175 |
| | ) | |
| ASMA SAMAN AHMED, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Roger V. Bradford, Judge
The Honorable Mary A. DeBoer, Magistrate
Cause No. 64D01-1109-DR-9161

**November 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Siraj Khaja Ahmed ("Husband") appeals the denial of his motion to correct error. Husband raises one issue, which we revise and restate as whether the trial court abused its discretion in denying his motion to correct error and in granting the motion to dismiss for forum non conveniens filed by Asma Saman Ahmed ("Wife"). We affirm.

The relevant facts follow. Husband and Wife were married in India in 1983 and later moved to the State of Louisiana. Husband and Wife had three children together, J., N., and S., and only S. remains unemancipated.

Husband and Wife moved from Louisiana to LaPorte, Indiana, in 1993 and to Chesterton, Indiana, in 1995. In 2001, Husband and Wife and their children moved from Chesterton to Bridgeview, Illinois, in order for the children to attend an Islamic school. In 2005, Husband and Wife and their children moved back to Chesterton. In 2006, Husband moved to a condominium in Chicago, Illinois. In 2009, Wife and S. moved from Chesterton to the Chicago condominium so that S. could attend an Islamic school, and Husband moved to the Chesterton residence.

On September 21, 2011, Husband filed a petition for dissolution of marriage in the Porter County Superior Court, Indiana, under cause number 64D01-1109-DR-9161 ("Cause No. 161"). On September 30, 2011, Wife filed a petition for dissolution of marriage in the Circuit Court of Cook County, Illinois, under cause number 11D-09591 ("Cause No. 591").[1]

---

[1] The record does not contain a copy of the chronological case summary ("CCS") for Cause No. 591.

Husband filed a motion to dismiss Wife's petition in Cause No. 591 on the basis that an action was pending in the State of Indiana under Cause No. 161 at the time Wife's petition was filed in Cook County, the Cook County Circuit Court entered an order on December 7, 2011 granting Husband's motion,[2] Wife filed a motion to reconsider the December 7, 2011 order,[3] and the court denied Wife's motion on March 2, 2012.

On December 30, 2011, under Cause No. 161, Wife filed a motion to dismiss for forum non conveniens and a motion to dismiss for lack of proper service in the Porter County Superior Court. In her motion to dismiss for forum non conveniens, Wife argued that she and S. had been domiciled in Chicago since 2009; that the parties had listed their Chesterton residence for sale; that Husband has moved his furniture out of the residence in Chesterton and to an apartment in the Chicago area; that Husband is a physician licensed to practice in Illinois; that other than the Chesterton residence Wife has no contacts with Indiana and that both parties have substantial contacts with Illinois; that Husband directed Wife to relocate to Illinois so that S. could attend school in Illinois; that the case involves issues of Husband's employment, the location of assets, child support

---

[2] The December 7, 2011 order provided in part:

> [T]his Court having reviewed the pleadings and having considered and heard argument from both counsel, and counsel for [Husband] having stipulated that Illinois is the only State with child custody jurisdiction over the minor child, [Husband's] Motion to Dismiss is granted and [Wife's] Petition of Dissolution of Marriage filed in Cook County, Illinois, is dismissed.

Appellant's Appendix at 71, 108.

[3] In her motion, Wife argued that, as Husband stipulated and the court's December 7, 2011 order stated, Illinois is the only State which has jurisdiction over the custody of the parties' minor child, that there is at least a question of fact as to the parties' contacts in Illinois which should have precluded dismissal of her dissolution proceedings in Illinois, and that Wife has proceeded in Indiana to ensure that Husband's divorce action in Indiana would ultimately be dismissed.

and educational expenses, and child custody and parenting time issues, and that evidence pertaining to all these issues is located in Illinois and Husband has already stipulated that Illinois is the only State that can properly exercise child custody jurisdiction; that Husband's petition under Cause No. 161 presents difficulties of access to sources of proof located outside Indiana; that the center of gravity for the family's financial activities and educational decisions regarding S. is located in Illinois; and that Husband's petition in Indiana would deprive Wife of remedies under Illinois law such as spousal support and a calculation of child support under the Illinois child support formula. On January 12, 2012, following a hearing at which the parties presented evidence regarding proper service and Wife testified in part regarding the parties' activities in Illinois and Indiana during their marriage, the Porter County Superior Court denied Wife's motion to dismiss for lack of proper service.

On February 9, 2012, Husband filed a response in opposition Wife's motion to dismiss for forum non conveniens under Cause No. 161 in which he argued that, beginning with the filing of her retaliatory petition, Wife has attempted to escape the Indiana divorce proceedings for unsubstantiated reasons; that the Cook County petition was dismissed and that, as a condition for the dismissal, Husband and Wife agreed that the custody of the couple's seventeen and a half year old daughter, S., was to fall with Wife; that Husband's choice of forum is not so inconvenient as to cause a substantial injustice to Wife; that Husband's choice of forum should be given great weight; that Wife resided in Porter County for fourteen years; that Wife does not currently have employment and is free to travel to and from court proceedings and that conversely

4

Husband's medical practice is predominantly in Michigan City, Indiana, and he would be forced to forego work for substantially longer times if the dissolution was adjudicated in Illinois; that a majority of the parties' marital assets are located in Indiana; that Husband's earnings are predominantly from his Indiana medical practice; and that child custody is not an issue in the current dissolution and S. will be of majority prior to adjudication of child support issues.

On March 2, 2012, the court held a hearing on Wife's motion to dismiss for forum non conveniens at which the parties presented evidence, in addition to the evidence presented at the January 12, 2012 hearing, regarding their contacts in the States of Indiana and Illinois and at which Wife testified that S. was scheduled to graduate from high school in May of 2013.

On March 6, 2012, the court issued an order which included findings of fact and conclusions of law which granted Wife's motion to dismiss for forum non conveniens. The court found in part that in 2009 Husband insisted that Wife and S. move to Chicago in order that S. could attend an Islamic school; that, other than the location of some of the parties' marital assets including the marital residence in Chesterton, Wife has had no connections with Indiana and has been locked out of the marital residence since she moved out; that Husband listed the Chesterton house for sale from February 2011 through December 2011 but has not relisted the residence and claims he has no intention of doing so; that Illinois is the proper jurisdiction to decide issues related to the custody of S.; that Wife "has spent no less than 4 ½ hours per day, 5 days per week, driving [S.] to and from the Islamic school she attends" and "[y]et Husband balks at having to

5

commute to Illinois to litigate this dissolution;" and that "[t]he fact that Husband attempts to use Wife's 'unemployment' as a reason why it is easier for her to come to Indiana to litigate this dissolution is absurd given the fact that Wife cannot maintain employment while she is required to transport [S.] to and from school for 4 ½ to 5 hours per day 5 days per week."[4] Appellant's Appendix at 6.

With respect to issues related to S., the court found in part that Husband "continuously beats the drum that he does not contest custody of [S.] who resides with Wife;" that, however, on February 9, 2012, Husband sent an e-mail message to S. and two e-mail messages to Wife stating that S. should stay with him; that "[t]he Court is concerned that Husband is saying that custody is not an issue to advance his own cause in Indiana;" that "the Court is not convinced of Husband's sincerity when it comes to him continuing to relinquish custody of [S.] to Wife" and that "[h]is e-mails of February 9, 2012 show Husband's underlying feelings;" that "[a]nother red flag to this Court is with Husband emphasizing that [S.] is almost 'the age of majority;'" that S. "is currently 17 years of age and a junior in high school" and "scheduled to graduate in May 2013;" that "[w]ith approximately 1 ½ years left of high school, [S.'s] educational needs and expenses remain up in the air;" that "[t]he Court would not be surprised to find that [S.] will attend college necessitating higher education expenses to be determined;" and that "Husband and Wife will very likely have further financial affairs to work through as [S.] completes high school and then begins her college education." Id. at 6-9.

---

[4] Wife testified that she spent "[f]our and-a-half hours every day, sometimes five hours" "every single day, five days a week" transporting S. to and from S.'s school in Villa Park, Illinois. March 2, 2012 Transcript at 10.

With respect to the marital assets, the court acknowledged that Husband has an active medical practice in Indiana, that, while Husband lists a medical complex owned by Husband and Wife as a marital asset, "there was no evidence presented of the value of Husband's practice," that "[p]resumably, Husband is making enough to pay the mortgages on the marital residence, condominium in Chicago and [S.'s] school expenses as well as other costs not delineated by the parties," that "[o]ther than Husband's IRA though, none of the other Indiana assets show a positive value," and that "while valuations must be done on some of the parties' marital assets, the remaining financial assets such as bank records, IRA statements, etc. do not necessarily require extensive and costly discovery" and "[m]uch of the information pertaining to marital assets are directly within Husband's control and can be obtained by him without much ado." Id. at 9.

Under the conclusion heading, the court found "that Wife did not move to Illinois because the laws were more favorable to her should she and Husband divorce one day" but "to be 100% available to their daughter each day," that Wife's family, the parties' rental property, and S.'s school is in Illinois, and that Husband has privileges with three hospitals in Illinois. Id. at 10. The court further found that Husband has lived, worked, and socialized in Illinois over the past ten years and his ties to Indiana appear to be strictly work-related; that Husband's listing of the Chesterton residence was consistent with him pursuing a partnership with Illinois doctors, being closer to his family in Chicago, and being available to help S. pursue medical school someday; and that, "[h]owever, since Husband filed for dissolution his conduct has been suspect in that he appears to have adjusted his behavior and plans and downplayed his ties to Illinois in

7

keeping with his desire to have the dissolution litigated in Indiana." Id. The court found that "the considerations of justice are not as detrimental to Husband as he wants to portray them," that the distance between Chesterton and Chicago is approximately fifty miles, that "[t]he inconvenience upon either party to travel to one jurisdiction or another is not unreasonable as would be the case if one party lived in Indiana and the other in New York," and that "[w]hen push comes to shove, and given this family's history and involvement with Illinois over the years, it is judicially more economical to have all dissolution issues litigated in one forum." Id. at 10-11. The court granted Wife's motion to dismiss for forum non conveniens and dismissed the dissolution action under Cause No. 161. Husband filed a motion to correct errors, which the court denied.

Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. In re Guardianship of Phillips, 926 N.E.2d 1103, 1106-1107 (Ind. Ct. App. 2010) (citing Leever v. Leever, 919 N.E.2d 118, 122 (Ind. Ct. App. 2009)). We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences drawn therefrom to support them. Julie C. v. Andrew C., 924 N.E.2d 1249, 1255-1256 (Ind. Ct. App. 2010). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Norris v. Pethe, 833 N.E.2d 1024, 1032-1033 (Ind. Ct. App. 2005). We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Id. The specific findings control only as to the issues they cover, and a general judgment standard applies to issues

upon which the trial court made no findings. Phillips, 926 N.E.2d at 1107. We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. Id.

The issue is whether the Porter County Superior Court abused its discretion in denying Husband's motion to correct error and granting Wife's motion to dismiss for forum non conveniens under Cause No. 161. We generally review rulings on motions to correct error for an abuse of discretion. Speedway SuperAmerica, LLC v. Holmes, 885 N.E.2d 1265, 1270 (Ind. 2008), reh'g denied; Ind. Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences drawn therefrom. Lighty v. Lighty, 879 N.E.2d 637, 640 (Ind. Ct. App. 2008), reh'g denied.

Ind. Trial Rule 4.4(C) governs the dismissal of litigation based on forum non conveniens:

> Jurisdiction under this rule is subject to the power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just.
>
> In the exercise of that discretion the court may appropriately consider such factors as:
>
> (1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;
>
> (2) Convenience to the parties and witnesses of the trial in this state in any alternative forum;
>
> (3) Differences in conflict of law rules applicable in this state and in the alternative forum; or

> (4) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

The Indiana Supreme Court has stated that "[t]he language of the rule itself entrusts this determination to the trial court and so our review of a trial court's dismissal under this rule is limited to abuse of discretion." Anyango v. Rolls-Royce Corp., 971 N.E.2d 654, 656 (Ind. 2012). "A trial court abuses its discretion when it arrives at a conclusion that is clearly against logic and the natural inferences to be drawn therefrom." Id. (internal quotation marks and citations omitted).[5] The Court also stated that "our Trial Rule 4.4(C) wisely entrusts the *forum non conveniens* decision to the trial court under such reasonable conditions as the court in its discretion may determine to be just." Id. at 663 (internal quotation marks omitted).

---

[5] To the extent that Husband argues that "Indiana courts can only decline litigation due to forum when it is likely to create a 'substantial injustice' to the defendant," Appellant's Brief at 11, and cites in part to Emp'rs Ins. of Wausau v. Recticel Foam Corp., 716 N.E.2d 1015 (Ind. Ct. App. 1999), reh'g denied, trans. denied, this court's opinion in Anyango v. Rolls-Royce Corp., 953 N.E.2d 1147 (Ind. Ct. App. 2011), vacated by 971 N.E.2d 654 (Ind. Jul. 30, 2012), which, although cited in Husband's brief filed on August 31, 2012, had been vacated by the Indiana Supreme Court on July 30, 2012, and other cases, we observe that the Indiana Supreme Court in Anyango made the following comments:

> We note language in most decisions of the Court of Appeals applying Trial Rule 4.4(C) to the effect that "[t]he purpose of [the rule] is to permit a case to be litigated in another [forum] upon a showing that litigation in Indiana is so inconvenient that substantial injustice is likely to result." Emp'rs Ins. of Wausau v. Recticel Foam Corp.[,] 716 N.E.2d 1015, 1021 (Ind. Ct. App. 1999) (citing Freemond [v. Somma], 611 N.E.2d [684,] 691 [(Ind. Ct. App. 1993)]), trans. denied. This language appears to date to Killearn Properties[ v. Lambright, 176 Ind. App. 684, 687, 377 N.E.2d 417, 419 (1978)], when it appeared with a citation to "1 Harvey, Indiana Practice. Author's Comments 4.4(C) p. 313." 176 Ind. App. at 687, 377 N.E.2d at 419. It would conflict with the explicit discretionary authority granted to the trial court in Trial Rule 4.4(C) if a motion to dismiss could not be granted unless it was clear that litigation in Indiana would be so inconvenient that "substantial injustice" would be likely to result.

971 N.E.2d 654, 656 n.2 (Ind. 2012).

10

Husband contends that the trial court's order of dismissal must be vacated because Wife failed to satisfy her burden of proof and the trial court's findings, even if true, do not support a finding of forum non conveniens. Husband argues that Wife concedes that there is no inconvenience to her by having the case in Indiana and that assembling the evidence would not be unduly burdensome. Husband argues that Wife does not specifically identify a witness that would be inconvenienced were the matter to be tried in Indiana. Husband further argues that the Illinois court plainly dismissed the entirety of the case under Cause No. 591 and did not reserve any issue. Husband asserts that Wife's true motivation is greed and that Trial Rule 4.4(C) provides for consideration of a conflict in laws but not a conflict in remedies. Husband maintains that the facts do not support an undue burden to Wife to proceed in Indiana.

Wife maintains that the trial court did not abuse its discretion in determining that, based on all the facts presented, the case should be heard in Illinois. Wife argues that she has continuously lived in the Chicago condominium from 2009 to the time of the hearing, that she drives her youngest daughter to school which takes approximately four and one-half hours each day, that she is not employed and dependent upon Husband for support, that the transportation burden prevents her from finding employment, that she has extended family in Illinois, and that Husband practices in both States and has family and social ties to Illinois. Wife further argues that the schedule of assets prepared by Husband indicates his opinion that the real estate in Indiana, bank account, and life insurance trust have no value, that the assets of significant value are located in Illinois, including the rental property and the Chicago condominium, and that Husband at one

11

time considered partnering with a group in Illinois. Wife also argues that Husband's consent to custody is contradicted by his e-mail messages and seems to be an obvious attempt to circumvent the significant contacts determinations for child custody jurisdiction. Wife argues that, under the applicable standard of review, the court properly exercised its discretion in making a determination where this case should be heard based on the evidence presented and the findings it made.

In his reply brief, Husband argues "that 5/7 of the parties['] assets were located in Indiana, 98.76% of the parties['] income [was] generated in Indiana, witnesses (such as the accountant) [were] located in Indiana, nearly ¾ of the value of the marriage [was located] in Indiana, [and] the marital home [was] located in Indiana . . . ." Appellant's Reply Brief at 1-2. Husband argues that Wife's sole argument is that a custody fight should be fought in Illinois but that there is no custody dispute. Husband also argues that, even were a custody dispute to exist, the issues of division of marital property are separate, that Wife makes no argument on these issues, and that there is no cogent or legally supported argument defending the trial court's abuse of discretion in dismissing the entire action. Husband requests that this matter be remanded with instructions to reinstate the dissolution proceedings.

Husband and Wife presented fairly detailed arguments and evidence to the trial court in support of their positions in their respective filings and at the January 12, 2012 and March 2, 2012 hearings. The record reveals that Husband and Wife resided in Indiana for a number of years. Specifically, the evidence shows that Husband and Wife lived together in LaPorte, Indiana, from 1993 through 1995 and in Chesterton, Indiana,

from 1995 through 2001, and again from 2005 through 2006. At the January 12, 2012 hearing, Wife testified that during the time the parties lived in Illinois from 2001 to 2005, the parties retained the residence in Chesterton and resided there on the weekends. Wife lived in the Chesterton residence from 2006 through 2009 while Husband lived in the Chicago condominium until Wife and S. moved to the condominium in 2009 so that S. could attend an Islamic school and Husband returned to live at the Chesterton residence. Wife testified that Husband had listed the Chesterton house for sale. Wife submitted documents, attached as exhibits to her motion, which included among other documents a listing contract dated March 3, 2011, and an e-mail message indicating that Husband had listed the Chesterton residence for sale until December 31, 2011. Husband testified that he intended to continue living in Chesterton and that he had attempted to sell the house because it is a big home, he lived alone, and he was looking for a smaller place, ideally close to Michigan City, Indiana. Wife further testified that after she moved to Chicago in 2009 she had no contacts with the State of Indiana, that her family lived in Illinois, that she was presently unemployed, and that she spent around four and one-half hours each day transporting S. to and from school. Wife also indicated that Husband had an office in Illinois, family in Illinois, and a social life in Illinois. Wife also testified that Husband promoted or produced live music shows in Chicago from artists from India. Husband testified that he has not earned any income from the not-for-profit organization of which he is a part and that the artists perform all over the United States and not just in Chicago.

In addition, with respect to S., Wife presented evidence that Husband sent three e-mail messages on February 9, 2012, which was the same day Husband filed his response

13

in opposition to Wife's motion to dismiss stating that Husband agreed that custody of S. would be with Wife. Specifically, Husband sent an e-mail message to S. in which he stated that he was "making arrangements for us to stay close to school so u have time with me and school" and that "I have talked to mom about this already and she agreef [sic]." March 2, 2012 Respondent's Exhibit 1. Husband sent two e-mail messages to Wife, one of which stated in part that "it is really important for [S.] to stay with me" and the other which stated in part that "[i]t is extremely crucial for [S.] to be with me," "[S.] has lived enough with u and it's my turn," and "U can keep her the weekend when she is not rounding with me." Id. Husband testified that the e-mail messages presented by Wife stemmed from a meeting he had with Wife and S. discussing S.'s education and that it was not his intention for Wife not to have custody but that he desired to provide guidance and support for S.

The court found in part that Husband "continuously beats the drum that he does not contest custody of [S.] who resides with Wife;" that, however, on February 9, 2012, Husband sent an e-mail message to S. and two e-mail messages to Wife stating that S. should stay with him; that "[t]he Court is concerned that Husband is saying that custody is not an issue to advance his own cause in Indiana;" that "the Court is not convinced of Husband's sincerity when it comes to him continuing to relinquish custody of [S.] to Wife" and that "[h]is e-mails of February 9, 2012 show Husband's underlying feelings;" that "[a]nother red flag to this Court is with Husband emphasizing that [S.] is almost 'the age of majority;'" that S. "is currently 17 years of age and a junior in high school" and "scheduled to graduate in May 2013;" that "[w]ith approximately 1 ½ years left of high

14

school, [S.'s] educational needs and expenses remain up in the air;" that "[t]he Court would not be surprised to find that [S.] will attend college necessitating higher education expenses to be determined;" and that "Husband and Wife will very likely have further financial affairs to work through as [S.] completes high school and then begins her college education." Id. at 6-9.

With respect to Husband's medical practice, the record reveals that in an affidavit dated February 9, 2012, filed with the court, Husband stated that his current medical practice is located in Michigan City, Indiana, that in Michigan City he had six full-time and four part-time employees, that in addition to the Michigan City clinic he regularly practiced at hospitals in LaPorte, Valparaiso, Michigan City, and Merrillville, Indiana, that he never founded, opened, or maintained a medical office in the State of Illiniois, that his practice in Illinois is limited to treatment of patients while "covering" for another medical practice, and that his total income from his medical practice in 2011 was ninety-eight percent attributable to his Indiana practice and two percent attributable to his Illinois practice. Appellant's Appendix at 91. Husband testified that his medical practice has been in Michigan City since approximately 1993, and that he had considered a partnership with a group in Illinois three or four years earlier but had backed away as the majority of his work was in Porter and LaPorte Counties in Indiana. Husband also testified that he made rounds to hospitals in Porter County, LaPorte, and Michigan City, and occasionally Merrillville, and that it would be difficult to travel to Chicago to deal with the issues of appraisals, testimony, and appearances in court. Wife testified that she was one of the owners of the medical office building in Michigan City, Indiana, from

which her Husband practiced medicine. Wife also testified that for a time she was on Husband's payroll and received a direct deposit to her bank account although she did not work at the business. Wife indicated on cross-examination that in July 2011 she obtained funds of about $75,000 from a joint line of credit in order to pay expenses and that at that point Husband stopped the payroll.

With respect to other marital assets, a table of assets, attached as an exhibit to Husband's affidavit, indicated that Husband and Wife had a residential home and an apartment complex interest located in India, that Wife owned a rental home purchased in 2001 in Illinois with an estimated value of $100,000, that Husband and Wife owned the Chicago condominium with an estimated value of $477,500 and associated debt of $385,000, that Husband and Wife were beneficiaries of a family trust which held title to the Chesterton house with an estimated value of $610,000 and associated debt of $602,000, that Husband and Wife were the owners of the medical office building in Michigan City with an estimated value of $900,000 and associated debt of $950,000, and that Husband was the owner of an I.R.A. account with an estimated value of $180,000. The table of assets also indicated that Husband and Wife had two other trusts and a joint checking account and that Husband had interests in his medical practice companies and two bank accounts in Indiana but did not provide an estimated value of those assets.

Based upon the evidence presented to the trial court, including the location and nature of the marital assets, Husband and Wife's connections with the State of Illinois, Husband's medical practice, and issues related to S., we cannot say that the trial court arrived at a conclusion that is clearly against the logic and effect of the facts and

circumstances before it or the reasonable inferences drawn therefrom and thus cannot say that the trial court abused its discretion in granting Wife's motion to dismiss for forum non conveniens and in denying Husband's motion to correct error. See <u>Anyango</u>, 971 N.E.2d at 656-664 (holding that the trial court did not abuse its discretion in granting the defendants' motion to dismiss).

For the foregoing reasons, we affirm the trial court's order.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.