TRANSCONTINENTAL INSURANCE CO., Appellant–Defendant,

v.

J.L. MANTA, INC. Appellee–Plaintiff.

No. 45A03–9811–CV–484.

Court of Appeals of Indiana.

Aug. 24, 1999.

Rehearing Denied Oct. 4, 1999.

Philip E. Kalamaros, Thomas R. Hamilton, South Bend, Indiana, Attorneys for Appellant.

Shaun McParland Baldwin, Diane Karp Ehrhart, Chicago, Illinois, Martin Hoke, Schererville, Indiana, Attorneys for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Defendant–Appellant Transcontinental Insurance Company ("CNA") appeals the trial court's judgments in favor of Plaintiff–Appellee J.L. Manta, Inc. ("Manta").

We affirm.

### ISSUES

CNA raises three issues for our review, which we restate as:

I. Whether the trial court erred in finding CNA was either estopped from denying coverage and raising policy defenses or impliedly waived such defenses where estoppel or implied waiver served to enlarge coverage.

II. Whether the trial court erred in holding, as a matter of law, that Manta was prejudiced by CNA's actions.

III. Whether the trial court erred in entering judgment in favor of Manta for money damages and costs.

### FACTS AND PROCEDURAL HISTORY

In July, 1993, William Sult, Jr. ("Sult"), an employee of Cedar Lake Sheet Metals Company, was hired by Manta to work on an air conditioner located on the roof of a building leased by both Manta and Alpha Steel Corporation ("Alpha"). While on the roof, Sult fell through a skylight and was injured. He subsequently filed suit against both Manta and the owner of the building, the Lake County Trust Company.

At the time of Sult's accident, Manta was insured under a commercial general liability policy issued by Zurich Insurance Company ("Zurich") with a "per occurrence" limit of $1,000,000.00 and a retained limit of $300,000.00. Upon notice of the lawsuit filed against Manta by Sult, Zurich retained legal representation for Manta by the firm of Spangler, Jennings & Dougherty P.C. ("Spangler").

In April, 1993, CNA had issued a commercial general liability policy insuring Alpha, the Alpha Building Corporation, and the Lake County Trust Company. This policy pertained to the portion of the building leased to Alpha. In December, 1993, Manta was listed as an additional insured under the CNA policy, with coverage retroactive to April, 1993. The policy did not cover the portion of the building leased and occupied by Manta.

On July 13, 1994, CNA advised Spangler that "Manta is an additional insured under our policy, and we will be assuming the defense and liability of [Manta]." (R. 71). CNA retained Spangler as counsel. Once CNA accepted Manta's defense, it controlled all aspects of that defense, including discovery, litigation strategy, and settlement. CNA did not reserve a right to deny coverage or to raise policy defenses.

Spangler sent an initial report to CNA by letter dated August 15, 1994. The letter first explained that Zurich, not Manta, had previously retained Spangler. The letter also advised that the accident took place on the Manta portion of the building. Specifically, the letter advised that "[t]here is no question that this accident took place on that portion of the premises leased to [Manta] by Lake County Trust." (R. 75). CNA continued to control all aspects of Manta's defense without any reservation of rights. Consequently, Zurich advised CNA that it was closing its file.

On October 28, 1994, Zurich sent Sult's amended complaint (which added the Lake County Trust ("the Trust") as a defendant), to CNA, noting that the Trust was also insured by CNA. Over a year after it had assumed control of Manta's defense without a reservation of rights and it had been informed that the accident occurred on a portion of the building not covered by its policy, CNA asked Spangler for a summary of the case. By letter of October 18, 1995, Spangler again explained the ownership of the property and, as in the August 1994 letter, advised CNA that the accident took place on that portion of the premises leased to Manta.

On November 27, 1995, sixteen months after it accepted Manta's defense without a reservation of rights, CNA informed Zurich that it was withdrawing from Manta's defense. In its withdrawal letter, CNA admitted that Manta was its additional insured, but claimed that its policy was not implicated because the incident "took place on a building leased to [Manta]." (R. 88).

After CNA withdrew, a settlement of the suit occurred whereby Sult was to receive $540,000.00. Manta filed a declaratory judgment action seeking declaration of CNA's duty to provide Manta with a defense and to reimburse Manta for the settlement amount and costs. In Count II of the complaint, Manta alleged both that CNA should be estopped from asserting any policy defenses or it impliedly waived the defenses by its decision to provide a defense for a period of sixteen months without a reservation of rights. After CNA's answer, Manta filed a motion for judgment on the pleadings under Ind.Trial Rule 12(C) pertaining to Count II.

The trial court granted the motion, and subsequently entered a money judgment against CNA for damages and costs. CNA now appeals both the judgment on Count II of the pleadings and the trial court's subsequent award of damages and costs.

### DISCUSSION AND DECISION

#### I. ESTOPPEL/IMPLIED WAIVER

CNA contends that the trial court erred in granting judgment on the pleadings on Count II of Manta's complaint. CNA further contends that the trial court should have allowed it to disclaim coverage. In support of its contentions, CNA argues that Manta should not be able to use the doctrines of estoppel and implied waiver to create coverage.

In reviewing a trial court's decision on a motion for judgment on the pleadings pursuant to T.R. 12(C), this court conducts a *de novo* review. *National R.R. Passenger Corp. v. Everton by Everton,* 655 N.E.2d 360, 363 (Ind.Ct.App.1995), *trans. denied.* We will affirm the trial court's grant of a T.R. 12(C) motion for judgment when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Noblesville Redevelopment Commission v. Noblesville Associates Limited Partnership,* 674 N.E.2d 558, 562 (Ind.1996). We will accept as true the well-pleaded material facts alleged, and we will not affirm if there are any genuine issues of material fact. *Alonso v. City of Hammond,* 648 N.E.2d 1221, 1224 (Ind.Ct.App.1995), *reh'g denied, trans. denied, disapproved on other grounds in Budden v. Board of School Commissioners,* 698 N.E.2d 1157 (Ind.1998). The moving party is deemed to have admitted well-pleaded facts in favor of the nonmovant, and this court will draw all reasonable inferences in favor of the non-movant. *Beta Steel Corp. v. Porter County, Indiana,* 695 N.E.2d 979, 981 (Ind. Ct.App.1998), *trans. denied.*

Indiana has for many years adhered to the general rule that the doctrines of estoppel and implied waiver are not available to create or extend the scope of coverage of an insurance contract. *See Travelers Insurance Co. v. Eviston,* 110 Ind.App. 143, 37 N.E.2d 310,

316 (1941); *Kentucky Central Life & Accident Insurance Co. v. White*, 106 Ind.App. 530, 19 N.E.2d 872, 875 (1939). The rule is not unique to Indiana. *See e.g. Sellers v. Allstate Insurance Co.*, 82 F.3d 350, 353 (10th Cir.1996); *Nationwide Mutual Insurance Co. v. Filos*, 285 Ill.App.3d 528, 220 Ill.Dec. 678, 673 N.E.2d 1099, 1103 (1996), *appeal denied*, 172 Ill.2d 554, 223 Ill.Dec. 196, 679 N.E.2d 381 (1997); *Mississippi Hospital & Medical Service v. Lumpkin*, 229 So.2d 573, 576 (Miss.1969); *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 550 (Tex.App.1990), *writ denied, reh'g on writ of error overruled.* The rationale for the general rule is that an insurance company should not be made to pay the loss for which it has not charged a premium. *See Kentucky Central*, 19 N.E.2d at 875; *Nationwide*, 220 Ill. Dec. 678, 673 N.E.2d at 1103. This court recently has reaffirmed the validity of the general rule. In *Pekin Insurance Co. v. Wheeler*, 493 N.E.2d 172, 174 (Ind.Ct.App. 1986), we stated the rule in holding that an insurer could not establish the existence of its insured's coverage with another insurer through estoppel or implied waiver where the contract with the other insurer was void due to forgery by the insurer's agent. *Id.* at 174. Also, in *Egnatz v. Medical Protective Co.*, 581 N.E.2d 438, 441 ( Ind.Ct.App.1991), we recited the general rule in holding that the provider of medical malpractice coverage was not estopped by its past automatic renewals from timely denying renewal of coverage. *Id.* at 441. We also recited the rule in holding that the provider had not impliedly waived the termination clause in the insurance contract with the insured. *Id.*

Two exceptions to the general rule have been recognized in other jurisdictions. The first exception applies where an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk. *See e.g., Crown Life Insurance v. McBride*, 517 So.2d 660, 661–62 (Fla.1987) (citing a number of courts that have adopted this exception); *Bucon, Inc. v. Pennsylvania Manufacturing Association Insurance Co.*, 151 A.D.2d 207, 547 N.Y.S.2d 925, 927 (1989). This exception has been a vehicle "to create insurance coverage where

to refuse to do so would sanction fraud or other injustice." *Nationwide*, 220 Ill.Dec. 678, 673 N.E.2d at 1103 (*quoting Crown Life*, 517 So.2d at 662). The second exception applies where "an insurer defends an action on behalf of an insured, with knowledge that would provide a defense to coverage, but without a reservation of rights." *Id.* at 1103–04. This exception "is predicated upon the insurer's conflict of interest: it is too likely to be defending the insured in the lawsuit while at the same time formulating policy defenses to deny coverage." *Id.* at 1104 (*quoting American Eagle Insurance Co. v. Nettleton*, 932 S.W.2d 169, 174 (Tex.Ct.App.1996)). It has also been justified by the fact that the insured is deprived of his right to control his defense. *Id.* (*citing Williams*, 791 S.W.2d at 551).

Our supreme court applied the first exception in *Huff v. Travelers Indemnity Co.*, 266 Ind. 414, 363 N.E.2d 985, 992 (1977) to estop the insurer from asserting a vacancy provision of the contract when the insurer knew the insured's building was vacant at the time the coverage was purchased. In doing so, the court noted that the general rule "has been questioned and overturned in numerous jurisdictions." *Id.*

The second exception, which is relevant to the issue before us, has not been applied in Indiana. However, application of the exception was presaged in *Hermitage Insurance Co. v. Salts*, 698 N.E.2d 856, 859 (Ind.Ct.App. 1998), wherein we stated that it is "widely recognized that, with respect to insured-insurer disputes, when an insurance company assumes the defense of an action against its insured, without reservation of rights, and with knowledge of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of noncoverage." *Id.* (*citing Pennsylvania National Mutual Casualty Insurance Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478 (5th Cir.1992); *City of Carter Lake v. Aetna Casualty and Surety Co.*, 604 F.2d 1052 (8th Cir.1979); *Sauer v. Home Indemnity Co.*, 841 P.2d 176 (Alaska 1992); *First United Bank of Bellevue v. First American Title Insurance Co.*, 242 Neb. 640, 496 N.W.2d 474, 480 (1993); *American General*

*Fire and Casualty Co. v. Progressive Casualty Co.*, 110 N.M. 741, 799 P.2d 1113 (1990); *National Indemnity Co. v. Ryder Truck Rental, Inc.*, 230 A.D.2d 720, 646 N.Y.S.2d 169, 170 (1996)).

■ In the present case, the well-pleaded material facts establish that CNA informed Zurich in July of 1994 that it was assuming the defense and liability of Manta. In August of 1994, CNA was informed of its coverage defense. However, fifteen months passed from the time it learned of its defense until the time that it asserted the defense. During this fifteen months, CNA controlled all aspects of the defense, including discovery, litigation strategy, and settlement. CNA did not reserve its right to assert a coverage defense, and Manta relied on CNA to control and conduct its defense until resolution of the underlying suit. The evidence is sufficient to establish all of the elements necessary for the application of the exception, including prejudice. The issue of prejudice, however, requires more discussion, and it will be addressed below.

## II. PREJUDICE

■ CNA contends that the trial court erroneously determined that the pleadings established prejudice as a matter of law. CNA argues that Manta should be required to allege and prove facts demonstrating actual prejudice.

No Indiana court has directly addressed the issue of prejudice as it relates to an insurer's assumption of defense of the insured without a reservation of rights; however, Indiana courts have recognized that a party may be prejudiced as a matter of law when it is deprived of its right to control litigation. For example, Indiana courts have held that where an insurer receives late notice of a claim from its insured, the insurer is deemed to have suffered prejudice as a matter of law because the insurer was denied the opportunity to control the defense. *See Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind.1984); *Allstate Insurance Co. v. Kepchar*, 592 N.E.2d 694, 699 (Ind.Ct.App.1992), *trans. denied*; *Milwaukee Guardian Insurance, Inc. v. Reichhart*, 479 N.E.2d 1340, 1343 (Ind.Ct. App.1985), *reh'g denied, trans. denied*; *Re-*

*public–Franklin Insurance Co. v. Silcox*, 92 F.3d 602, 604 (7th Cir.1996). The courts reasoned that an insured's conduct is inherently prejudicial because the insurer was prevented from being able to control the lawsuit in the early stages. *See Miller*, 463 N.E.2d at 265 (insurer is prejudiced because it was denied the opportunity to adequately investigate the claim and prepare an adequate defense); *Allstate*, 592 N.E.2d at 699 (insurer was prejudiced as a matter of law because late notice denied the insurer the opportunity to participate in the defense and control the case); *Milwaukee Guardian*, 479 N.E.2d at 1343 (insurer was prejudiced by late notice as a matter of law because it was denied the opportunity to participate in settlement negotiations and unable to guide the litigation); *Republic–Franklin*, 92 F.3d at 605 (even though insured may have lacked any defenses against the plaintiff in the underlying suit, insurer was prejudiced by late notice because it was deprived of the opportunity to procure a more favorable settlement). A finding of prejudice as a matter of law in these cases prevents quibbling about "whether the case was vigorously conducted by the parties, and whether there were grounds for an appeal from the judgment." *Allstate*, 592 N.E.2d at 699. Therefore, "the mere fact that the delay in notice precluded [the insurer] from exercising nearly every right reserved under the policy is itself enough to justify a finding of prejudice as a matter of law." *Id.*

The potential for prejudice to the insurer in the above-cited cases and to an insured under the present facts is similar. Therefore, we hold that an insured suffers prejudice as a matter of law where an insurer, without reserving its rights and giving the insured an opportunity to determine whether to accept the tender of defense, assumes a complete defense of the underlying suit against the insured and controls the litigation for an extended period of time after becoming aware of a coverage defense.

Our holding is consistent with case law from other jurisdictions. For example, in *Royal Insurance Co. v. Process Design Associates, Inc.*, 221 Ill.App.3d 966, 164 Ill.Dec. 290, 582 N.E.2d 1234, 1240 (1991), the court,

after noting that prejudice will not be presumed, held that "if, by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage." Also, in *Hartford Insurance Group v. Mello*, 81 A.D.2d 577, 437 N.Y.S.2d 433, 435 (1981), the court, after noting that an estoppel will lie only if the insured has been prejudiced by the insurer's actions, held that "[a] disclaimer two years after knowledge of noncoverage, during which time [the insurer] had assumed the complete defense of the [underlying action], and after the underlying action had been placed on the trial calendar, cannot be considered timely and is prejudicial as a matter of law." *See also, Knox–Tenn Rental Co. v. Home Insurance Co.*, 2 F.3d 678 (6th Cir.1993), *reh'g and suggestion for reh'g en banc denied* (holding that when "there is no evidence of awareness of a reservation of rights, even an insured with actual knowledge of policy contents can be said to reasonably rely as a matter of law, and no discussion of the reliance issue is required"); *Braun v. Annesley*, 936 F.2d 1105, note 5 (10th Cir.1991) (holding that "[p]rejudice to the insured is presumed by virtue of the insurer's assumption of the defense").

In addition to the facts pertaining to the length of time that CNA defended while knowing of a coverage defense and to CNA's failure to reserve its right to assert a coverage defense, Manta alleged in its complaint that (1) it "relied to its detriment upon the defense provided by CNA" and (2) CNA "controlled all aspects of that defense, including discovery, litigation strategy, and settlement." Manta also alluded to, and incorporated into the complaint, the letter from CNA in which it stated that "we will be assuming the defense and liability of [Manta]." These well-pleaded facts are sufficient to establish that CNA, without reserving its rights and giving Manta an opportunity to determine whether to accept the tender of defense, assumed a complete defense of the underlying suit against Manta and controlled the litigation for an extended period of time after becoming aware of the coverage defense. The facts are therefore sufficient to establish prejudice as a matter of law because Manta was precluded from controlling its own defense.

■ CNA argues that its denial in its answer of the allegations pertaining to Manta's detrimental reliance and to the extent of the defense provided by CNA requires this court, under the standard of review for a judgment on the pleadings, to assume that its denials are true. In light of the allegations in the complaint and in the assertion made by CNA in the letter incorporated into the complaint that it was "assuming the defense and liability of [Manta]," we do not find that CNA's boilerplate denials are "facts" which must be accepted in CNA's favor.

CNA cites *Protective Insurance* and similar cases as authority that actual prejudice must be shown. These cases are inapposite, as they stand for the proposition that an insured must show actual prejudice where its insurer fails to timely take action. Where there is no action, there is no detrimental reliance or relinquishment of control of the case.

### III.  DAMAGES/COSTS

In its memorandum in support of its motion for judgment on the pleadings on Count II of the complaint, Manta requested that the trial court enter a judgment declaring that

(a) CNA has a duty to defend [Manta] in the *Sult* suit;  (b) CNA breached this duty to defend;  (c) CNA is obligated to reimburse [Manta] all sums [Manta] incurred in defense of the *Sult* suit and any consequential damages, including but not limited to interest limited on said sums;  (d) CNA has a duty to indemnify [Manta] for any judgment or settlement in the *Sult* suit; and (e) CNA is estopped from asserting the terms and conditions of its policy to deny defense or indemnify obligations stemming from the *Sult* suit.

[Manta] asks this Court to enter judgment in favor of [Manta] and against CNA for all sums [Manta] paid for the defense of the *Sult* suit, plus interest and costs as well as all sums incurred by [Manta] in this litigation which sums would not have

been incurred but for CNA's breach of its policy obligations.

(R. 161).

After the trial court granted Manta's motion for judgment on the pleadings as to liability, it invited the parties to file material on the issue of damages and costs. Manta and CNA filed briefs, exhibits, and affidavits pertaining to the issue. Both submitted hundreds of pages of supporting material which directly contradicted the material filed by the opposing party. A hearing was held in which each party summarized the written evidence. After considering the parties' summaries and written evidentiary material, the trial court entered judgment requiring CNA to pay the settlement amount of $540,000.00 and defense costs of $50,081.30, for a total judgment in the amount of $590,081.30, along with prejudgment interest in the amount of eight percent from the date of the settlement in the underlying litigation. (R. 820).

On appeal, both CNA and Manta presume that the trial court's judgment is a summary judgment. Accordingly, they suggest that this court use the summary judgment standard of review. However, our review of the record, including the chronological case summary, the hearing transcripts pertaining to the motion for judgment on the evidence and the subsequent hearing on damages and costs, and the court's judgments pertaining to the judgment on the evidence and damages and costs, establishes that both the trial court and the parties understood that the evidentiary material presented to the court was conflicting. In addition, it was clear that the trial court would enter judgment after determining which parties' evidence was more credible. If CNA wished to present additional evidence at the hearing, in whatever form, it should have requested to do so. The trial court entered a general judgment, not a summary judgment.

This court will affirm a general judgment on any legal theory supported by the evidence adduced at trial. *Shelby Engineering Co., Inc. v. Action Steel Supply, Inc.*, 707 N.E.2d 1026, 1027 (Ind.Ct.App.1999). We neither reweigh the evidence nor rejudge the credibility of the witnesses; rather, we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.*

The trial court's judgment on damages and costs is based upon the trial court's prior judgment that CNA is estopped from asserting its coverage defense. CNA does not question that some damages and costs should be paid. Its was the trial court's prerogative to weigh the evidence and to determine credibility in reaching its judgment. We hold that the trial court's judgment was supported by the evidence. We will not reweigh the evidence or redetermine credibility.[1]

### CONCLUSION

The trial court did not err in granting Manta's motion for judgment on the evidence as it pertained to Count II of Manta's complaint. Furthermore, the trial court did not err in the determination of damages and costs.

Affirmed.[2]

ROBB, J., and DARDEN, J., concur.

---

1. Due to a lack of cogent argument or citation of authority, CNA has waived any challenge to the propriety of the award of pre-judgment interest.

2. In the conclusion to its brief, Manta states that "[p]ursuant to Indiana Appellate Rule 15(H), [Manta] also requests that this Court award [Manta] ten percent of the final judgment awarded to [Manta] by the trial court as damages in defending this appeal." Appellee's Brief at 30.

It is apparent that Manta is actually making a request for damages pursuant to App.R. 15(G), which pertains to damages, and not App.R. 15(H), which pertains to costs.

Because of the chilling effect upon the exercise of the right to appeal, this court must use extreme restraint when exercising its discretionary power to award appellate damages. *John Malone Enterprises, Inc. v. Schaeffer*, 674 N.E.2d 599, 606 (Ind.Ct.App.1996). A strong showing is

required to justify an award of appellate damages, and the sanction is not imposed "to punish lack of merit unless an appellant's contentions and arguments are utterly devoid of all plausibility." *Summit Account and Computer Service, Inc. v. RJH of Florida, Inc.*, 690 N.E.2d 723, 729 n. 8 (Ind.Ct.App.1998), *reh'g denied, trans. denied* (*quoting Progressive Casualty Insurance Co. v. Morris*, 603 N.E.2d 1380, 1384 (Ind.Ct.App. 1992)). An award in the present case is not justified.