SAFE AUTO INSURANCE COMPANY,
Appellant–Third–Party–Defendant,

v.

AMERICAN FAMILY MUTUAL IN-
SURANCE COMPANY, Appel-
lee–Third–Party–Plaintiff.

No. 06A05–0712–CV–747.

Court of Appeals of Indiana.

July 18, 2008.

Rehearing Denied Oct. 10, 2008.

Kirk A. Horn, Mandel Pollack & Horn, P.C., Carmel, IN, Attorney for Appellant.

Robert S. O'Dell, O'Dell & Associates, P.C., Carmel, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-third-party-defendant Safe Auto Insurance Company (Safe Auto) appeals the trial court's orders denying Safe Auto's motion for summary judgment against appellee-third-party-plaintiff American Family Mutual Insurance Company (American Family) and granting summary judgment in American Family's favor. Safe Auto raises the following arguments: (1) the trial court erroneously struck an affidavit that had been designated to support Safe Auto's positions on the cross summary judgment motions; (2) the trial court erroneously concluded as a matter of law that Safe Auto waived all coverage defenses aside from non-cooperation because it sent a letter to its insured explaining that no coverage would be offered for the vehicle accident in question because of the insured's failure to cooperate; and (3) the trial court erroneously found as a matter of law that coverage exists. Finding, among other things, that Safe Auto did not waive its coverage defenses and that coverage does not exist as a matter of law, we reverse and remand with instructions to enter summary judgment in Safe Auto's favor.

## FACTS

On July 10, 2004, Kevin Stump was involved in a motor vehicle accident in Zionsville when Andres Cagal, who was driving a Ford truck owned by Silvia Escobedo, evidently ran through a stop sign and collided with Stump's vehicle. Stump fractured his hip as a result of the accident.

Escobedo and the truck were covered by a Safe Auto insurance policy that was in full force and effect at the time of the accident. The policy provided bodily injury and personal injury liability limits of $25,000.

On July 15, 2004, Stump's attorney called Safe Auto to report the accident and make a claim for his injuries and damages to his vehicle. Shortly after Stump made the claim, Safe Auto began to make a series of unsuccessful attempts to contact Escobedo. Safe Auto received the police report on July 29, 2004, which confirmed the date of the accident, the identity of Escobedo's truck, and the fact that Cagal was driving at the time of the accident. The report included the pertinent information regarding Cagal's Mexican driver's license. Safe Auto neither investigated Cagal's license nor attempted to contact Cagal at that time.

On August 30, 2004, after Escobedo had failed to respond to four letters requesting that she contact Safe Auto, the insurer sent Escobedo a final letter informing her that it would "be unable to assist [her] with any settlement of damages or cost as a result of this accident" because of her failure to cooperate with the investigation. Appellee's App. p. 248.

On May 2, 2005, Stump sued Cagal for his alleged negligence that caused the accident and Stump's injuries. Stump also sued American Family, his uninsured/underinsured motorist carrier, because Safe Auto had denied his claim.[1] On July 13, 2005, American Family filed a third-party complaint against Safe Auto, seeking a declaratory judgment that Safe Auto must defend and indemnify Cagal, that Safe Auto is the primary insurer for claims based on Cagal's negligence, and that American Family is responsible only for excess and/or underinsured motorist coverage to Stump. The third-party complaint

---

1. The complaint is not included in the record on appeal.

was Safe Auto's first notice of the ongoing litigation. Safe Auto responded and raised a number of affirmative defenses, including Escobedo's and Cagal's respective failures to cooperate with the investigation of the accident.

On September 19, 2006, American Family filed a motion for summary judgment against Safe Auto, alleging that the defense based on Escobedo's non-cooperation was inadequate. On October 19, 2006, Safe Auto responded and filed its own summary judgment motion.

On December 6, 2006, Safe Auto learned that Escobedo had moved to Phoenix, Arizona, on July 4, 2004—before the accident took place on July 10, 2004. On December 14, 2006, the trial court granted Safe Auto two more weeks to designate additional evidence from Escobedo. Safe Auto requested a telephonic deposition of Escobedo, but the trial court allegedly agreed with American Family that Safe Auto should be ordered to finance Escobedo's transportation to Indiana so that she could be deposed in person. On December 28, 2006, Safe Auto filed the affidavit of Escobedo and a supplemental memorandum of law. Safe Auto sought and was granted more time so that Escobedo could be deposed in person. Escobedo, however, moved again at some point without leaving forwarding information; thus, Safe Auto was unable to contact her to arrange a deposition.

On October 17, 2007, American Family filed a brief and other materials in opposition to Safe Auto's summary judgment motion. American Family moved to strike Escobedo's affidavit, asserting that at a July 16, 2007, telephonic pretrial conference, the trial court "noted that it would strike the affidavit of Silvia Escobedo if the telephone deposition was not scheduled." Appellant's App. p. 150.

Following a hearing, the trial court entered a number of orders on December 5, 2007. First, the trial court granted American Family's motion for summary judgment, finding that

> ... the material facts are not in dispute and that the law is with [American Family] and against [Safe Auto].

> The Court finds that [Safe Auto] failed to establish admissible facts to support a denial of coverage under its policy of insurance issued to Sylvia [sic] Escobedo. [Safe Auto] denied all claims solely upon the alleged non-cooperation of Ms. Escobedo and waived any other policy defenses, including specifically any defenses as to Andres Cagal. As a result, [Safe Auto] owes primary coverage to Andres Cagal for the accident, including a duty to defend and indemnify Mr. Cagal for this action.

*Id.* at 9. The second order denied Safe Auto's cross-motion for summary judgment, finding that "the material facts are in dispute," specifically,

> [m]aterial issues of fact exist as to the following matters: whether [Safe Auto] waived its policy defenses, other than the non-cooperation of Sylvia [sic] Escobedo; whether [Safe Auto] suffered any prejudice; and whether [Safe Auto] presented admissible evidence that any other policy defenses would bar coverage for Andres Cagal.

*Id.* at 12. Additionally, the trial court summarily granted American Family's motion to strike Escobedo's affidavit. Safe Auto now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

As we consider Safe Auto's arguments that the trial court erroneously struck Escobedo's affidavit, granted summary judgment in American Family's favor, and

denied Safe Auto's summary judgment motion, we observe that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

## II. Escobedo's Affidavit

Safe Auto first argues that the trial court erred by summarily striking Escobedo's affidavit, pointing out that there is no evidence in the record that the trial court, in fact, conditioned its acceptance of the affidavit on the occurrence of an in-person deposition of Escobedo. The admission of evidence is entrusted to the trial court's sound discretion, and we will reverse a trial court's ruling thereon only if it abuses that discretion. *Estate of Prickett v. Womersley,* 885 N.E.2d 619,

625 (Ind.Ct.App.2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or it misinterprets the law. *Id.*

Initially, we observe that there is no evidence in the record supporting American Family's argument that the trial court conditioned the admission of Escobedo's affidavit into evidence on Safe Auto's ability to produce Escobedo for an in-person deposition. Neither the transcript nor the Chronological Case Summary indicate that the trial court ruled in that fashion.

Furthermore, American Family does not argue that Escobedo's affidavit violates Indiana Trial Rule 56(E), which governs the admissibility of affidavits on summary judgment. Under these circumstances, nothing in the record supports the trial court's order striking Escobedo's affidavit. Consequently, we reverse that order and will consider Escobedo's affidavit to be part of Safe Auto's designated evidence on appeal.

## III. Waiver

Safe Auto next argues that the trial court erroneously concluded that it waived all coverage defenses aside from Escobedo's non-cooperation. Waiver is "the intentional relinquishment of a known right involving both knowledge of the existence of the right and the intent to relinquish it." *Gallant Ins. Co. v. Wilkerson,* 720 N.E.2d 1223, 1227 n. 3 (Ind.Ct.App. 1999).

The trial court did not explain why it concluded that Safe Auto waived nearly all of the coverage defenses. Inasmuch as Safe Auto raised all possible coverage defenses and filed a declaratory action as soon as it was brought into Stump's lawsuit by American Family, we can only infer that the trial court based its waiver conclu-

sion on the contents of Safe Auto's denial of coverage letter to Escobedo.

The accident occurred on July 10, 2004. After making repeated, unsuccessful attempts to contact Escobedo, Safe Auto sent her a letter on August 30, 2004, explaining the following:

> This letter is to advise you that we have completed our investigation of this claim. We will be unable to assist you with any settlement of damages or cost as a result of this accident.
>
> Safe Auto regrets denial of any claim as a result of this accident. We feel, however, we are offered no other recourse since you have failed to cooperate with us regarding this matter.
>
> If you would have any information, which you feel would change our evaluation of this matter, please forward it to our attention. It will be reviewed and an appropriate response provided to you.

Appellee's App. p. 248. In the months following the August 30 letter, Safe Auto was not aware of any further actions taken by Stump or any other parties. Eight months later, on May 2, 2005, Stump filed a lawsuit against Cagal and American Family. Two months after the complaint was filed, American Family filed a third-party complaint against Safe Auto on July 13, 2005, meaning that Safe Auto's first involvement in any litigation occurred nearly one year after it sent the letter to

Escobedo invoking the non-cooperation defense.

When Safe Auto sent the letter to Escobedo explaining that she would not be covered for Cagal's accident with Stump, it had had no contact with her whatsoever. Thus, it is not possible that Safe Auto could have known all potential coverage defenses in play. As put by Safe Auto, "[t]he law cannot require the insurer to divine, in writing, all potential coverage defenses that are presently unknown due to its insured's failure to cooperate." Appellant's Br. p. 17. As noted above, waiver must involve "knowledge of the existence of the right," and here, there is no evidence establishing that at the time Safe Auto sent the letter to Escobedo, it knew that other coverage defenses might apply.[2] Moreover, the letter evinced Safe Auto's intent to remain flexible if Escobedo contacted the insurer with relevant information. Finally, we do not believe that an insurer's initial letter to its insured denying a claim—before any lawsuit has been filed or threatened—must contain an exhaustive list of every possible coverage defense that might be raised in the event a future lawsuit is filed.

In sum, we simply cannot see how these facts give rise to a conclusion that Safe Auto has waived all coverage defenses aside from Escobedo's non-cooperation. Once actual litigation was instituted, Safe

---

**2.** To the extent that American Family argues that Safe Auto failed to contact Cagal and investigate his relationship to Escobedo directly, we note that insurers have a duty to conduct a reasonable investigation of the facts underlying a complaint. *Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1259 (Ind.Ct.App. 2002). At the very least, whether Safe Auto conducted a reasonable investigation is a question of fact rendering summary judgment in American Family's favor inappropriate. Even if we accept for argument's sake that

Safe Auto should have made more of an effort to contact and investigate Cagal, however, it would not alter our conclusion that Safe Auto has not waived its coverage defenses, inasmuch as we find that, under the circumstances of this case, Safe Auto's letter to Escobedo—sent months before litigation was threatened and evincing its intent to remain flexible if more information came to light— did not waive any coverage defenses not explicitly stated therein.

Auto took all necessary steps to reserve its rights to deny coverage:

> "When an insurer questions whether an injured party's claim falls within the scope of policy coverage or raises a defense that its insured has breached a policy condition, the insurer essentially has two options: (1) file a declaratory judgment action for a judicial determination of its obligations under the policy; or (2) hire independent counsel and defend its insured under a reservation of rights."

*Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1258 (Ind.Ct.App.2002) (quoting *Wilkerson*, 720 N.E.2d at 1227). Here, as soon as Safe Auto learned of the litigation, it took both of those steps. Specifically, it hired an attorney for Cagal *and* it filed a declaratory judgment action raising all coverage defenses at issue. Under these circumstances, we find that the trial court erroneously concluded that Safe Auto waived all coverage defenses aside from Escobedo's non-cooperation and will proceed to consider those defenses herein.

### IV. Coverage

■ Finally, Safe Auto argues that the trial court erroneously concluded that coverage of the accident exists as a matter of law. There are a number of coverage defenses raised by Safe Auto, but we find one to be dispositive, namely, whether Cagal was covered by the policy at the time of the accident.

The policy explicitly states that coverage and Safe Auto's duty to defend does not apply to a loss

\* \* \*

2. Arising while your covered auto is being operated by a resident of your household or by a regular user of your covered auto unless that person is listed as an additional driver on the declarations page....;

\* \* \*

9. Arising out of the ownership, maintenance, or use of any motor vehicle during the course of any business or employment, unless you have paid a specific premium for business use coverage.

Appellant's App. p. 77. The only substantive evidence in the record regarding the relationship of Cagal to Escobedo's vehicle is Escobedo's affidavit, which states as follows:

3. Although I owned the truck, it was used primarily by Isadoro Trujillo, with whom I lived while I was in Indiana, I had my own vehicle at the time, and the truck was for Trujillo's regular use.

4. Mr. Trujillo used the truck mostly in his business, which involved providing cleaning services to stores, such as Marsh and Kroger. This was his primary vehicle, and he used it generally every day.

\* \* \*

6. I do not recall ever advising Safe Auto that Mr. Trujillo was regularly using the [truck], or requesting that he be added to the policy.

7. On July 4, 2004, Trujillo and I broke up and I moved back to Phoenix, AZ. I had moved to Indiana on July 6, 1999 and, until returning to Arizona on July 4, 2004, I lived continuously with Mr. Trujillo.

\* \* \*

10. I did not personally know Andres Cagal, other than the fact he was an employee of Mr. Trujillo in his cleaning business and lived in Indiana.

11. I did not give Mr. Cagal permission to use the [truck], nor did I authorize Mr. Trujillo to let others use the vehicle.

*Id.* at 104–05.

Therefore, the following facts, as established by the designated evidence in the record, are undisputed: (1) Trujillo and Escobedo lived together in the same residence for five years; (2) Trujillo was the primary user of the insured vehicle; (3) he used the vehicle for business purposes; (4) Trujillo was not included on the policy as a covered driver; and (5) Escobedo did not give Cagal permission to use the vehicle. Pursuant to the unambiguous terms of the policy, therefore, Trujillo's use of the vehicle was not covered, inasmuch as he was a resident of Escobedo's household and was not listed as an additional driver. Furthermore, inasmuch as Trujillo was not listed as a driver on the policy, it is reasonable to infer that Escobedo did not pay a specific premium for business use coverage; consequently, Trujillo was also excluded because he primarily used the vehicle for his business.

We will accept for argument's sake that it is theoretically possible to conclude that Escobedo gave implied permission to Cagal to use the vehicle by virtue of her express permission to Trujillo, which contained no express restrictions on Trujillo's ability to permit others to drive the truck. *See Raines v. Auto–Owners Ins. Co.,* 703 N.E.2d 689, 692 (Ind.Ct.App.1998) ("where the insured placed no prohibition or restriction, express or implied, upon the use or user, and the use was within the scope of the permission given the first permittee, the second permittee was insured ...."). Even so, the fact that Trujillo's use of the vehicle was not covered by the policy nec-

essarily means that he could not confer coverage upon Cagal. In other words, the fact that Trujillo's use of the vehicle was excluded from the policy breaks the chain of permission and coverage that might otherwise have existed between Escobedo, Trujillo, and Cagal. Under these circumstances, we find that Cagal's use of the vehicle was not covered by the policy as a matter of law. Similarly, we find that Safe Auto does not have a duty to defend Cagal from lawsuits based on the accident with Stump.[3] Thus, the trial court erroneously granted American Family's summary judgment motion and denied Safe Auto's summary judgment motion.

The judgment of the trial court is reversed and remanded with instructions to enter summary judgment in Safe Auto's favor.

RILEY, J., and ROBB, J., concur.

---

**3.** Inasmuch as we find in Safe Auto's favor on this basis, we need not consider its other arguments on appeal.