FOUNDERS INSURANCE COMPANY, Appellant,

v.

Virginia OLIVARES, Linda M. Vara, Daniel R. Farley, AAA Chicago Motor Club Insurance Company, Appellees.

No. 45A04–0712–CV–743.

Court of Appeals of Indiana.

Oct. 7, 2008.

Michael K. Lulich, Michael K. Lulich & Associates, Danville, IN, Attorney for Appellant.

Patrick B. McEuen, Millbranth & Bush, Valparaiso, IN, Attorney for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Founders Insurance Company ("Founders") appeals the trial court's declaratory judgment order in favor of Appellees Virginia Olivares, Linda Vara, Daniel Farley, and AAA Chicago Motor Club Insurance Company (collectively "Appellees").

We affirm.

### ISSUE

Whether the trial court properly concluded that Founders was barred from denying coverage to Farley because he was an "excluded driver" under Vara's auto insurance policy with Founders.

### FACTS

Vara and Farley are the owners of a 1992 Oldsmobile Cutlass. Vara is Farley's mother. Vara obtained insurance coverage for the Cutlass from Founders. In November 2002, Vara renewed her insurance policy on the Cutlass. The effective dates of the renewed policy were from November 26, 2002, to November 26, 2003. The policy lists Vara as the named insured and her husband, Pietro Doldi, as an additional scheduled driver. Farley was specifically listed under the policy as an excluded driver. With regard to liability coverage, the policy defines the term "insured" as follows:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

(Appellant's App. 32). The term "family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household. This in-cludes a ward or foster child." (Appellant's App. 31).

The policy listed Vara's address as 2211 169th Street, Apt. 10, Hammond, Indiana 46323. However, at all relevant times, Vara did not reside at this address. She, instead, was living in New Jersey. Farley, though, did reside at the Hammond address provided to Founders. While Vara was in New Jersey, the Cutlass was left parked at Farley's residence. Farley was unable to drive the Cutlass at that time because his license was suspended.

On December 16, 2002, Olivares was involved in an automobile accident in Hammond with an unidentified individual who was driving Vara and Farley's Cutlass. The unidentified individual fled the scene of the accident. Police later found the Cutlass abandoned several blocks away from where the accident occurred. The police noted that there was no column damage to the Cutlass and that the keys were missing. Several hours after Olivares' accident, Farley reported to the police that the Cutlass had been stolen.

On January 8, 2003, Olivares' counsel sent a letter to Founders. In the letter, Olivares asserted that Farley was driving the Cutlass at the time of the accident. The letter further stated that Olivares would be filing a personal injury action and that if she was not able to negotiate a settlement with her insurer, AAA Chicago Motor Club Insurance Company, then she would pursue an action against Vara and Farley.

On September 18, 2003, Founders sent Vara a letter in which it reserved its right to deny coverage based on the "non-permissive user" defense. In the letter, Founders noted that under Vara's insurance policy, coverage was not provided to any insured "[u]sing a vehicle without a reasonable belief that the 'insured' is entitled to do so." (Appellant's App. 176).

Founders stated that the driver of the Cutlass was unknown and did not have permission to drive the vehicle. As such, Founders stated that it was declining coverage for Olivares' accident.

Olivares filed suit against Vara, Farley, and AAA Chicago Motor Club Insurance Company on June 18, 2004. She alleged that Vara and Farley owned the Cutlass and that Farley was driving the Cutlass at the time of the accident. Thereafter, Founders provided defense counsel to both Vara and Farley.

On May 3, 2006, Olivares filed an amended complaint in which she added a count against Founders. Olivares asked the trial court to enter a declaratory judgment holding that Founders must provide coverage to Vara and Farley for the December 16, 2002 accident. In July 2006, Founders filed an answer to Olivares' amended complaint along with a counterclaim in which it sought a declaratory judgment that it was not obligated to provide coverage to Farley for the accident involving Olivares because he was not an insured under Vara's policy.

A bench trial was conducted on June 12, 2007 to assess whether either party was entitled to declaratory judgment on the coverage issue. During the trial, Founders introduced into evidence two e-mail format letters.[1] Neither letter was on Founders' letterhead or signed by the alleged author James Tomlinson. Both letters were dated September 14, 2004 and were addressed to "Linda Vara & David Farley." Exhibit Book, Defendant's Exhibits A and B. One letter was to be sent to Farley's Hammond address while the other was to be mailed to Vara's residence in New Jersey. No evidence was introduced that confirmed the letters were ever mailed or that Vara or Farley received either of these letters. In the letters, Founders stated:

> **Founders Insurance** investigation to date indicates that each of you have attested that the listed vehicle was stolen and not being driven by David Farley at the time it was involved in an accident with Virginia Olivares.... If, at any time, during this litigation, it is determined or proven that David Farley was operating the listed vehicle at the time of this accident, defense and indemnification will be withdrawn for David, as David Farley is an excluded driver under Founders [sic] policy for Linda Vara.

*Id.* Scott Osborne, a senior claims analyst with Founders, testified that the use of "David Farley" throughout the letters was a typographical error and that Founders was in fact referring to Daniel Farley. Osborne acknowledged that Farley would be considered a "family member" as that term is defined in the insurance policy for the Cutlass.

On November 19, 2007, the trial court entered an order granting declaratory judgment in favor of Appellees. In its order, the trial court made the following relevant findings of fact and conclusions of law:

### Findings of Fact

\* \* \*

11. In her letter of January 2003, [Olivares] advised Founders of her allegation and contention that Farley was operating the motor vehicle on December 16, 2002.

---

1. Scott Osborne, a senior claims analyst with Founders, explained that when a letter is sent out "it is scanned directly from Microsoft Word into the image-write software we maintain at the company." (Tr. 69).

\* \* \*

15. By September 18, 2003, Founders had been aware for more than nine (9) months that Olivares would assert and attempt to prove that Farley was operating the vehicle on the night of the crash.

16. At no time between January 8, 2003 and September 18, 2003, did Founders tell Olivares or her counsel that Founders was reserving the right to deny indemnification to Farley or Vara for Olivares' damages because [Farley] was specifically excluded from coverage under the declaration page of the insurance policy. In fact, in Founders' declination letter of September 18, 2003, there is absolutely *no* mention of the fact that *if* Farley *was* the driver, he was excluded from coverage.

17. Approximately one (1) year after advising Olivares and her attorney that indemnity was being declined due to the "non-permissive user" defense, Founders claims to have sent another letter dated September 14, 2004, telling Farley that defense and indemnification would be withdrawn for Farley, "... as Daniel Farley is an excluded driver under Founders [sic] policy for Linda Vara." *At no other time did* Founders advise Olivares or her attorney, nor can it be proven that in fact both Farley and Vara were told, about this "excluded driver" defense.

18. The copies of this reservation of the "excluded driver" defense are not on actual Founders letterhead, nor are they signed by the purported author, James Tomilson.

19. The letters reserving the right to decline indemnity based upon the "excluded driver" defense were admitted over objection, but due to the fact that they have not been signed, nor are they on letterhead, the weight and sufficiency of those letters is highly suspect and nominal.

\* \* \*

### Conclusions of Law

\* \* \*

4. Defendant Founders bears the burden of production and persuasion with respect to its claim that it may owe no duty to indemnify [Farley] from damages awarded to Olivares if the jury determines that Farley was operating the 1992 Old[s] Cutlass on December 16, 2002. In this case, Olivares asserts that Founders is estopped from asserting a right to deny indemnification of [Farley] should the jury conclude that Farley was operating the motor vehicle on December 16, 2002. It is a general rule that estoppel may not create or extend coverage in an insurance contract, but there are two (2) exceptions to this general rule. *Employers Ins. of Wausau v. RFC,* 716 N.E.2d 1015, 1028 (Ind.App.1999).

\* \* \*

6. A second exception to the general rule applies when an insurance company assumes that [sic] the defense of an action on behalf of its insured without a reservation of rights but with notice or knowledge of the facts which would have permitted it to decline coverage.

\* \* \*

8. Whether or not this second exception to the "no coverage by estoppel" general rule applies in *this* case is a question of fact for the fact-finder, in this case the Court.

9. It is clear that for a period of twenty[-]one (21) months, Founders knew or had reason to believe that Olivares would assert that Farley was operating the motor vehicle in question on December 16, 2002.

10. In the September 2003, [sic] Founders *first* notice to its insured that it would deny coverage, Founders asserts the "non-permissive user" defense. By that date, Founders *also* knew about, and ignored, the "excluded driver" exception to coverage.

11. When Founders declined to defend or indemnify Vara and Farley on September 18, 2003, Founders knew or with the exercise of reasonable diligence could have known, that Farley was the asserted driver of the vehicle, and Founders at that time failed or refused to assert the "excluded driver" issue.

12. Given the passage of time and Founder's [sic] knowledge of the availability of the "excluded driver" defense or exclusion, as a matter of law Founders is precluded from asserting the same as a defense to this lawsuit.

13. As an alternative, Founders has failed to prove by a preponderance of the evidence that the company appropriately asserted the "excluded driver" defense. Founders could not prove that [Farley], whose residence is in Hammond, Indiana, ever actually received the letter asserting that if the jury concluded that Farley was driving, Founders would immediately drop the defense and indemnity of Farley.

14. Further, it is not clear that Founders ever signed and mailed the reservation of rights letter asserting the excluded driver policy exception or defense.

15. Farley is Vara's son. If the jury concludes that Farley was operating the motor vehicle which struck [Olivares] on December 16, 2002, there is coverage under the definition of the term "insured" in the policy. Founders provides liability coverage to pay damages for bodily injury or property damage for which any "insured" becomes legally responsible because [sic] an auto accident. An "insured" is defined throughout the policy as a) the "named insured" (Vara) and any "family member." A "family member" is any person related to Vara by blood, marriage, or adoption who is a resident of Vara's household.

16. As a matter of law, Farley was a "family member" and was a resident of Vara's household in Indiana.

17. Founders is estopped from asserting the "excluded driver" exception to coverage.

***Judgment***

Because Founders has failed to properly reserve the right to decline coverage for Farley as a[n] "excluded driver" at the time when Founders first knew or had reason to know that Farley was operating the motor vehicle, Founders shall be legally obligated to pay any damages for which Farley becomes legally obligated to pay by reason of his operation of a motor vehicle on December 16, 2002.

(Appellant's App. 20–24) (citations omitted).

## *DECISION*

■■■ Founders argues the trial court erred in granting declaratory judgment in favor of Appellees. "Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment

or decree." *Ember v. Ember*, 720 N.E.2d 436, 438 (Ind.Ct.App.1999). Founders is appealing from a decision in which the trial court entered findings of fact and conclusions of law. In this situation, we first determine whether the evidence supports the findings and then assess whether the findings support the judgment. *Truelove v. Truelove*, 855 N.E.2d 311, 314 (Ind.Ct. App.2006). We will set aside the findings or the judgment only if they are clearly erroneous. *Id.* Findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them. *Id.* The trial court's judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *Id.* We will only consider the evidence most favorable to the judgment and all reasonable inferences flowing therefrom. *Ember*, 720 N.E.2d at 438. "We will not reweigh the evidence or assess the credibility of witnesses." *Id.*

■■■ "Where, as here, the trial court enters findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not specifically made a finding." *Id.* at 438–39. "We may affirm a general judgment on any theory supported by the evidence introduced at trial." *Id.* at 439. "However, before affirming on a legal theory supported by the findings but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings." *Id.*

Founders contends that the trial court erred in concluding it is estopped from relying on the "excluded driver" defense to deny coverage to Farley under Vara's insurance policy. Founders asserts that it properly reserved its right to rely on this defense in the September 14, 2004 letters allegedly sent to Vara and Farley.

■■ In the insurance context, "estoppel 'refers to a preclusion from asserting rights by an insurance company or an abatement of rights and privileges of the insurance company where it would be inequitable to permit the assertion.'" *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1028 (Ind.Ct.App. 1999) (quoting 46 C.J.S. Insurance § 786 (1993)), *trans. denied.*[2] "Indiana adheres to the general rule that the doctrine of estoppel is not available to create or extend the scope of coverage of an insurance contract." *Id.* The rationale for this rule is that an insurance company should not be forced to pay for a loss for which it had not charged a premium. *Id.*

■ However, this court has recognized exceptions to the general rule. *Id.* Under one of these exceptions, "an insurer may be estopped from raising the defense of noncoverage when it assumes the defense of an action on behalf of its insured without a reservation of rights but with knowledge of facts which would have permitted it to deny coverage."[3] *Id.* "This

---

**2.** Founders directs our attention to *Safe Auto Ins. Co. v. American Family Mut. Ins. Co.*, 890 N.E.2d 737 (Ind.Ct.App.2008). In that case, we held that the trial court erred in concluding that Safe Auto waived all coverage defenses. *Id.* at 743. *Safe Auto* is distinguishable. In this case, we are dealing with estoppel, not waiver. Estoppel and waiver, while often used synonymously, have distinct meanings.

*Employers Ins. of Wausau*, 716 N.E.2d at 1027–28.

**3.** A second exception, not at issue here, applies "when an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk." *Employers Ins. of Wausau*, 716 N.E.2d at 1028.

exception is predicated upon the insurer's conflict of interest, that is, at the same time the insurer defends the insured, it may also be formulating policy defenses to deny coverage." *Id.* "It is also justified by the fact that the insured is deprived of his right to control his defense." *Id.* Whether an insurer is estopped from disclaiming liability under the insurance policy is generally a question for the factfinder unless the facts giving rise to the estoppel are undisputed and susceptible of only one interpretation. *Id.*

█ In order to determine whether the trial court properly applied this exception here, we must consider whether (1) Founders had sufficient knowledge of facts that would have permitted it to deny coverage; (2) Founders assumed the defense of Farley without obtaining an effective reservation of rights agreement; and (3) Farley suffered some type of harm or prejudice. *Transcontinental Ins. Co. v. J.L. Manta, Inc.,* 714 N.E.2d 1277, 1281–82 (Ind.Ct. App.1999).

The trial court found that "[w]hen Founders declined to defend or indemnify Vara and Farley on September 18, 2003, Founders knew or with the exercise of reasonable diligence could have known, that Farley was the asserted driver of the vehicle, and Founders at that time failed or refused to assert the 'excluded driver' issue." (Appellant's App. 23). The evidence supports this finding. Vara renewed her insurance policy with Founders on the Cutlass in November 2002. Under the policy, Farley was specifically listed as an excluded driver. The Cutlass was left parked at Farley's residence. On December 16, 2002, the Cutlass was involved in an automobile accident with Olivares' vehicle in Hammond. On January 8, 2003, Olivares sent a letter to Founders wherein she asserted that Farley was driving the Cutlass at the time of the accident. In-

cluded with this letter was a copy of the police report for the accident. The report indicates that after the accident, the driver of the Cutlass fled the scene. The Cutlass was found abandoned several blocks away from the accident. The keys to the vehicle were missing and no column damage was found. Thus, Founders had sufficient knowledge of facts that would have permitted it to deny coverage based on Farley's status under the policy as an "excluded driver."

The parties do not dispute that after Olivares filed her complaint on June 18, 2004, Founders provided defense counsel to Farley. Founders contends that at the time it assumed Farley's defense, it had properly reserved its right to later rely on the "excluded driver" defense through the September 14, 2004 letters. The trial court disagreed. It found that it was "not clear Founders ever signed and mailed the [September 14, 2004] reservation of rights letter asserting the excluded driver ... defense." *Id.* As a result, the trial court found that Founders "failed to prove by a preponderance of the evidence that the company appropriately asserted the 'excluded driver' defense." *Id.*

At trial, Founders introduced into evidence the September 14, 2004 e-mail format letters. Neither letter was on Founders' letterhead or signed by the alleged author James Tomlinson. Founders produced no evidence that confirmed the letters were ever mailed or that Vara or Farley received either of the letters. Throughout both letters, Founders erroneously stated that it was denying coverage to David Farley rather than Daniel Farley. This evidence supports the trial court's finding that the September 14, 2004 letters were not mailed and that Founders did not properly reserve its right to deny coverage to Daniel Farley because he was an "ex-

cluded driver" under Vara's insurance policy.

Last, we consider whether Farley suffered any harm or prejudice. We previously addressed the issue of prejudice in *Manta.* In that case, we first noted that "a party may be prejudiced as a matter of law when it is deprived of its right to control litigation." *Manta,* 714 N.E.2d at 1282. Building upon that, we held:

> [A]n insured suffers prejudice as a matter of law where an insurer, without reserving its rights and giving the insured an opportunity to determine whether to accept the tender of defense, assumes a complete defense of the underlying suit against the insured and controls the litigation for an extended period of time after becoming aware of a coverage defense.

*Id.*

Here, Founders became aware of the "excluded driver" defense in January 2003 when Olivares sent it a letter asserting that Farley was driving the Cutlass at the time of the December 16, 2002 accident. After Olivares filed her complaint in June 2004, Founders provided defense counsel to Farley and continued to control Farley's defense up to the time of trial. At no time either before or after Founders assumed Farley's defense did Founders reserve its right to rely on the "excluded driver" defense. Because there was no proper reservation of rights by Founders as to the "excluded driver" defense, Farley was not aware at the time he accepted defense counsel from Founders that Founders would later deny coverage if it were found that he was the driver of the Cutlass at the time of the accident. In such a situation, Farley could not make an intelligent choice between retaining his own counsel or accepting Founders' defense counsel. *See Royal Ins. Co. v. Process Design Assocs., Inc.,* 221 Ill.App.3d 966, 164 Ill.Dec. 290,

582 N.E.2d 1234, 1239 (1991) (noting that a reservation of rights must adequately inform the insured of the rights which the insurer intends to reserve for it is only when the insured is adequately informed of the potential policy defenses that he can intelligently choose between retaining his own counsel or accepting the tender of defense counsel from insurer). Based on this, we conclude as a matter of law that Farley was prejudiced by the denial of his right to control his own defense.

Therefore, the trial court properly concluded that Founders is estopped from denying coverage to Farley because he is an "excluded driver" under Vara's auto insurance policy with Founders.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.